370 A.2d 732

**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**NATIONAL FEDERATION OF THE BLIND and
American Brotherhood for the
Blind, Appellants.**

**COMMONWEALTH of Pennsylvania,
Appellant,**

v.

**NATIONAL FEDERATION OF THE BLIND and
American Brotherhood for the
Blind, Inc., Appellees.**

Supreme Court of Pennsylvania.

Argued Nov. 17, 1975.

Decided Feb. 28, 1977.

530

Allen C. Warshaw, Deputy Atty. Gen., Dept. of Justice, Harrisburg, for appellants.

Jerome H. Gerber, James L. Cowden, Harrisburg, for appellees.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

MANDERINO, Justice.

The Solicitation of Charitable Funds Act, Act of August 9, 1963, P.L. 628, as amended, 10 P.S. § 160–2(1) (Supp.1974–1975) requires all charities, domestic and foreign, to file a registration statement for approval by the Secretary of the Commonwealth prior to solicitation of funds in Pennsylvania. The registration is approved if it meets the requirements of the Act which are designed to protect the citizens of Pennsylvania from solicitations by unscrupulous charities including those who expend an excessive amount of the contributions received for expenses thus minimizing the monies available to directly benefit the beneficiaries of the charity.

The appellants, National Federation of the Blind (NFB) and American Brotherhood for the Blind, Inc., (ABB) are charitable organizations as defined in the Act. Both organizations are foreign corporations maintaining offices in Des Moines, Iowa. Appellants solicited

contributions from Pennsylvania residents in 1973 and 1974 by mailing letters to the homes of those solicited. Neither appellant filed a registration statement as required by the Act.

The Commonwealth of Pennsylvania, through the Attorney General, filed a complaint in equity which sought to enjoin further solicitations from Pennsylvania residents until the appellants complied with the filing requirements of the Act. The NFB and ABB filed preliminary objections to the Court's jurisdiction. The Commonwealth Court overruled the preliminary objections filed by appellants and subsequently denied the Commonwealth of Pennsylvania's request for a preliminary injunction. From these decrees the respective parties appeal.

## THE APPEAL OF THE NATIONAL FEDERATION OF THE BLIND AND AMERICAN BROTHERHOOD FOR THE BLIND

The NFB and ABB contend that the Due Process Clause of the Fourteenth Amendment and the Commerce Clause of the United States Constitution prohibit the Commonwealth Court from exercising in personam jurisdiction over them. In effect they are arguing that because their only connection with Pennsylvania was the solicitation of contributions via the United States Mail, they are not subject to judicial scrutiny within this State. We cannot agree with this conclusion.

The Supreme Court of the United States set forth the due process standards of jurisdiction in a trilogy of cases beginning with *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) wherein the Court stated:

" . . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he

have *certain minimum contacts* with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (Emphasis added.)

326 U.S. at 316, 66 S.Ct. at 158.

In *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Supreme Court of the United States applied this "minimum contacts" standard and concluded that California had jurisdiction over a foreign insurance company despite the fact that the company had no office or agent in California and had never solicited or done any insurance business in California apart from transactions through the mails involving a single insurance policy, the company's sole contact with California. The Court concluded that the state's manifest interest in providing effective means of redress for its residents outweighed any possible inconvenience to the insurer.

The limitations on the "minimum contacts" standard were expressed in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), where the Court decided that a Florida Court did not have jurisdiction over a nonresident trustee in a controversy involving the corpus of a trust. The Court distinguished *McGee, supra,* on three grounds. In *McGee,* (1) the cause of action *arose out of an act done or transaction consummated* in the forum state, (2) the forum state had enacted *special legislation* to exercise its "manifest interest" in providing effective redress for its citizens, (3) the required minimum contact did not rest solely on the *unilateral activity* of those bringing the action in the forum state.

Under the standards enunciated in *International Shoe, McGee,* and *Hanson,* the Commonwealth Court properly exercised jurisdiction over the appellants. Although appellants' only contact with this State was the solicitation of contributions by mail, this is sufficient when contrasted with the limitations of *Hanson.* We have here an act

done or transaction consummated in Pennsylvania by the appellants when they solicited contributions in Pennsylvania by mail. We also have before us a cause of action which arose out of that solicitation. We are not now asked to decide, nor do we decide, whether the solicitation of funds would be a sufficient contact to confer jurisdiction for a cause of action not arising out of the appellants' solicitation of funds in Pennsylvania. As in *McGee*, the cause of action here arose out of an act done or transaction consummated by appellants in the forum state.

In this case, also as in *McGee*, the Commonwealth has enacted *special legislation* to exercise a "manifest interest" in providing effective redress for its citizens. Pennsylvania is not attempting to limit or prohibit the solicitation of funds by all charitable organizations. It only seeks to protect the citizens of the Commonwealth from unscrupulous organizations whose philanthropy may be directed excessively to other than the intended beneficiaries. This vigilance is in an area where effective redress by individuals acting alone would be extremely burdensome if not practically impossible.

Finally, in this case, as distinguished from *Hanson*, *supra*, the cause of action is not based on the *unilateral* activity of the appellee. Rather, the appellants actively and purposefully sought to solicit contributions from residents of this Commonwealth. It is this activity that is the basis of jurisdiction.

We must conclude, therefore, that appellants have done acts or consummated transactions in this State sufficient for Pennsylvania to exercise jurisdiction consistent with the Due Process Requirement of the Fourteenth Amendment.

■ The appellants' second Due Process argument questions the validity of service of process upon the Secretary of the Commonwealth. They contend, in effect, that the Secretary is the real party-plaintiff in this ac-

tion and thus it is a denial of due process to effectuate service upon the appellants through the Secretary as their registered agent. This argument lacks merit for two reasons. First of all, the Attorney General, not the Secretary, is the only party authorized to initiate an action under the Act. (10 P.S. § 160–14). Second, even assuming the Secretary of the Commonwealth is the real party plaintiff, it does not necessarily follow that there is not a reasonable assurance that notice to the defendant will be actual. *International Shoe, supra.* The Act specifically provides that service is sufficient only if:

> ". . . notice of such service and a copy of such process are forthwith sent by the Attorney General to the charitable organization . . . by registered or certified mail with return receipt requested at its or his office. . . ." (10 P.S. § 160–13).

Under these circumstances we cannot conclude that the mailing of the notice of suit to appellants by registered or certified mail at its home office was not reasonably calculated to apprise appellants of the suit. Compare *Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927) with *Wuchter v. Pizzutti*, 276 U.S. 13, 48 S. Ct. 259, 72 L.Ed. 446 (1928).

The appellants also contend that even if the substitute service provisions of the Act are sufficient for Due Process purposes, those provisions were not complied with in this case. They argue that since a copy of the complaint was not personally served *upon the Secretary* as required by Section 13 of the Act, 10 P.S. § 160–13, but rather *delivered to his office,* the service is defective and must be set aside. This issue as to the technical defect in service was not raised in the defendants' preliminary objections nor otherwise presented to the trial court. A matter not raised in the trial court will not be considered on appeal. *Wenzel v. Morris Distributing Co.*, 439 Pa. 364, 266 A.2d 662 (1970).

Finally, the NFB and the ABB contend that their preliminary objections to the court's jurisdiction should have been sustained because imposing Pennsylvania's regulatory scheme upon them is forbidden by the Commerce Clause of the United States Constitution (U.S.Const. art. I, § 8).

The Supreme Court of the United States has defined and delineated the limits of the Commerce Clause in a multitude of cases over the past two hundred years. In *Aldens, Inc. v. Packel,* 524 F.2d 38 at 45 (3d Cir. 1975) the Third Circuit Court of Appeals presented an accurate and concise analysis of the factors considered by the United States Supreme Court in determining whether a state statute violates the Commerce Clause:

" . . . the commerce clause limits the power of a state to impose its choice of law on any transaction that is within the broad ambit of congressional power to regulate interstate commerce, and

(1) is one in which Congress has made its own choice of law, or

(2) is one in which Congress has made no specific choice of law, but

(a) despite this inaction the nature of the subject matter requires a uniform national rule, or

(b) the choice of law made by the state discriminates against persons engaged in interstate commerce in favor of local interests, or

(c) a non-discriminatory state choice of law, in an area where national uniformity may not be essential, imposes a burden on interstate commerce in excess of any value attaching to the state's interest in imposing its regulation."

As to the first part of the test, the Congress of the United States has not sought to regulate the field of charitable organization and solicitation. Thus, any regu-

lation imposed by Pennsylvania does not conflict with any preexisting regulation imposed by Congress.

In applying part 2(a) it must be concluded that although charities perform a laudatory function, that function cannot be perceived as an integral link in the national economic chain requiring a uniform national rule. (Compare *Allenberg Cotton Co., Inc. v. Pittman,* 419 U. S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974) involving a species of control over an intricate interstate marketing mechanism for cotton.) In this context the case is similar to *Robertson v. California,* 328 U.S. 440, 66 S.Ct. 1160, 90 L.Ed. 1366 (1946) wherein the Supreme Court of the United States upheld California's insurance company reserve requirements, *prior* to the passage of the McCarran Act, (59 Stat. 33, 15 U.S.C. §§ 1011–1015) an Act specifically leaving the area of insurance regulation to the States.

Part 2(b) presents no obstacle to this Commonwealth's attempt to regulate the solicitation of charitable contributions. Since the Act applies to both local and foreign charitable organizations, it cannot be said that the Act discriminates against those engaged in interstate commerce in favor of local interests.

Finally, in applying part 2(c), we conclude that although the registration provisions of the Act may burden interstate commerce to some degree, that burden is outweighed by this State's interest in protecting its citizens from the fraud and deceit of unscrupulous "charitable" organizations. The requirements of the Act are no more burdensome than those held constitutional in *Robertson v. California,* 328 U.S. 440, 66 S.Ct. 1160, 90 L.Ed. 1366 (1946).

We conclude, therefore, that the registration requirements of the "Solicitation of Charitable Funds Act" do not impose an undue burden on interstate commerce

and accordingly we affirm the decree of the Commonwealth Court which overruled the appellants' preliminary objections.

## THE APPEAL OF THE COMMONWEALTH OF PENNSYLVANIA

In this appeal, the Commonwealth of Pennsylvania appeals from the decree of the Commonwealth Court which denied its request for a preliminary injunction. Appellant first contends that under the express provisions of § 14(f) of the Act, 10 P.S. § 160–14(f) (Supp.1976) once *past violations* of the Act are established (failure to file a registration statement) an injunction *must* be issued. In effect, the appellant argues that the Act eliminates a court's discretion as to whether an injunction should be issued. Section 14(f) of the Act provides in part:

"[W]henever a charitable organization . . . has failed to file a registration statement required by this act . . . in addition to all other actions authorized by law, the Attorney General . . . may bring an action in the name of the Commonwealth of Pennsylvania against such charitable organization and its officers . . . to enjoin such charitable organization . . . from continuing such violation, solicitation or collection or engaging therein or doing any act in furtherance thereof and for such other relief as the court deems appropriate."

It should be noted initially that this Court has repeatedly held that the issuance of an injunction rests within the sound discretion of the trial court. *Vitacolonna v. City of Philadelphia,* 382 Pa. 399, 115 A.2d 178 (1955), *Rick v. Cramp,* 357 Pa. 83, 53 A.2d 84 (1947), *Borough of Cheswick v. Bechman,* 352 Pa. 79, 42 A.2d 60 (1945). In discussing congressional limitations on the court's discretion in an injunction, the Supreme Court of

the United States in *Hecht Co. v. Bowles,* 321 U.S. 321, 329, 330, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944) stated:

> "We are dealing here with the requirements of equity practice with a background of several hundred years of history . . . we do not believe that such a major departure from that long tradition as is here proposed should be lightly implied."

We agree with the above quoted opinion. The language of Section 14(f) of the Act merely authorizes the Attorney General to bring an action in the name of the Commonwealth upon failure of a charitable organization to comply with the registration requirements of the Act. It does not expressly provide that an injunction *must* be issued upon proof of a violation. Absent such express language we cannot conclude that the Legislature intended to eliminate the trial court's discretion in determining when an injunction should be issued.

The appellants also contend that even if the statute does not expressly provide for the mandatory issuance of an injunction upon proof of a past violation, the court must issue an injunction when continuing violations are threatened. *See Pennsylvania Public Utility Commission v. Israel,* 356 Pa. 400, 52 A.2d 317 (1947). The record here, however, does not clearly establish that violations are continuing. Although the appellees have challenged the appellants' right to force them to register under the Act, we do not perceive this assertion of their constitutional rights as an indication of their *intent* to continue violation of the Act in the future.

The limits of our review of the denial of a preliminary injunction were stated in *Lindenfelser v. Lindenfelser,* 385 Pa. 342, 343-44, 123 A.2d 626, 627 (1956):

> "Our uniform rule is that, on an appeal from a decree which refuses, grants or continues a preliminary injunction, we will look only to see if there were *any apparently reasonable grounds* for the action of the court

below, and we will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable. . . . " (Emphasis added.) We must conclude, therefore, that there were reasonable grounds for the action of the Commonwealth Court in denying the preliminary injunction.

We have considered other arguments raised by appellants and find them to be without merit.

The decrees of the Commonwealth Court ordering the defendants to file an answer to the Commonwealth's complaint within thirty days and denying the Commonwealth's motion for a preliminary injunction are affirmed.

Each party to pay own costs.

JONES, C. J., did not participate in the consideration or decision of this case.