**Appeal of L.C.**

Superior Court of Pennsylvania.

Argued Oct. 10, 1991.

Filed Feb. 24, 1992.

---

Deborah L. Barr, Towanda, for appellant.

Robert G. Dean, Montrose, for Children & Youth Service, participating party.

Before CAVANAUGH, McEWEN and OLSZEWSKI, JJ.

CAVANAUGH, Judge:

Two issues are asserted on appeal. First, the appellant asserts that a finding of dependency cannot be made until "reasonable" efforts are made to locate an absent, non-custodial parent whose whereabouts are unknown. Second, appellant claims that the trial court erred by failing to

grant her request to view the Susquehanna County Children and Youth Services file dealing with allegations of abuse to her children in preparation for a dependency hearing. Although we find the first argument without merit, we agree with the substance of the latter argument. We reverse.

The following facts are uncontested.[1] On November 30, 1990, appellee Susquehanna County Children and Youth Services (hereafter CYS) took appellant's five minor children into protective custody because of her alleged abuse. On December 20, 1990, the trial court heard argument on the motion of appellant to view the CYS file. The trial court, after initially granting the motion, rescinded the order after further argument. On December 21, 1990, appellant filed a motion *in limine* for access to the CYS file by her counsel. This motion was denied. On this same date, the Court conducted the dependency hearing. During the hearing, appellant requested the trial court to enforce a subpoena issued on December 20, 1990, requiring the CYS to produce the file. The trial court refused. Appellant also argued at the hearing that a dependency finding could not be made because the CYS must join an absent father to the proceedings. The trial court did not agree with her contention, and found based on the testimony of Forest City Assistant Police Chief Lucas and CYS caseworker Carol Newhart that there existed clear and convincing evidence that the children were dependent.

The first argument of appellant's we address is that a finding of dependency cannot be made until "reasonable" efforts are made to locate an absent, non-custodial parent whose whereabouts are unknown. Appellant claims that this proposition can be derived from our decision in *In Interest of Justin S.*, 375 Pa.Super. 88, 543 A.2d 1192 (1988). Appellant's argument claims that *Justin S.* established the principle that the non-custodial parent is a neces-

---

1. Appellee has declined to provide us with a Statement of the Case in its brief. Thus, we assume that appellee is satisfied with appellant's statement of the case, *see* Pa.R.App.Proc. 2112, upon which we largely rely.

sary party to a dependency hearing, such that a court lacks jurisdiction to make a finding of dependency when an absent father is not notified of the hearing. Our reading of that case suggests otherwise. The relevant facts of that case are as follows.

In *Justin S.*, Justin S. and Matthew S. resided with their natural mother and her paramour. After receiving a report of child abuse and investigating the allegations, the Westmoreland County Children's Bureau initiated the case by filing a petition claiming "dependency and abuse." Initially, the natural father, who visited the children on weekends, was suspected of abuse. However, exculpatory evidence soon thereafter eliminated the children's natural father as a suspect. The Common Pleas court believed that the abuser was either the mother or someone who gained access to the children through their relationship to her, such as her paramour and her brother. It determined, without a finding of dependency, that the father would be awarded custody of the children.

In affirming the Common Pleas court's order, the Superior Court held that a finding of dependency could not be made where the non-custodial parent "is ready, willing, and able to provide the child with proper parental care and control, especially when the lower court finds that the child was abused while under the custodial parent's care and control." *Id.*, 375 Pa.Superior Ct. at 103, 543 A.2d at 1199. Although the court did not specifically elaborate on its reasoning, it did declare that "[t]he fundamental purpose of proceedings under the Juvenile Act is to preserve the unity of the family." *Id.*, 375 Pa.Superior Ct. at 103, 543 A.2d at 1199.

Appellant apparently wants us to extrapolate from this case the general proposition that before a finding of dependency can be made, the local CYS has to make "reasonable" attempts to find the non-custodial parent. Appellant ignores that in *Justin S.*, the father was, as the decision notes, "ready, willing, and able" to provide the children with a proper nurturing atmosphere. *Id.*, 375 Pa.Superior Ct. at 103, 543 A.2d at 1198. The father had close contact

with the children, having weekend visitation rights, and the trial court specifically found that "the father could provide proper care for the children." *Id.*, 375 Pa.Superior Ct. at 101, 543 A.2d at 1198. Given these facts, the decision furthered the fundamental purpose of Juvenile Act proceedings: to preserve family unity. In sharp contrast are the facts of this case. The whereabouts, let alone the fitness, of the non-custodial father is unknown. He has had several different aliases, and he has had no contact with his children since they were a few weeks old.

■ The Juvenile Act defines a dependent child as one who "is without proper parental care or control...." 42 Pa.C.S.A. § 6302. We have long held that the proper inquiry to decide whether a child lacks proper care and control encompasses two discrete questions: (1) Is the child *at this moment* without proper care and control?; (2) If so, is such care and control *immediately available?* (emphasis ours) *In the Interest of Anita H.*, 351 Pa.Super. 342, 344–5, 505 A.2d 1014, 1015 (1986); *In re Barclay*, 321 Pa.Super. 417, 422, 468 A.2d 778, 781 (1983); *In the Matter of Mark T.*, 296 Pa.Super. 533, 535, 442 A.2d 1179, 1180 (1982). Here, it is clear that "at this moment" the children, if the substance of the allegations are correct, are without proper care and control. Moreover, the non-custodial parent is not "immediately available." Appellant would have us totally undercut the immediacy implicit in the standard used to determine dependency by placing the onerous burden on the local CYS of attempting to locate an absent father. While it is true that the fundamental purpose of the Juvenile Act is to preserve family unity, *cf. Justin S., supra*, 375 Pa.Superior Ct. at 103, 543 A.2d at 1199, the above standard reflects a concern that the child be taken out of an abusive environment with dispatch and placed in a more favorable one.

We are especially reluctant to require a local CYS to investigate the whereabouts of an absent non-custodial parent where our legislature has not provided guidance. Judicial restraint demands that we not place on a local CYS a requirement that has no explicit or implicit statutory origin. Investigating the whereabouts of an absent non-custodial

parent can be time consuming and costly. This may be especially true because a local CYS may not have the expertise or trained personnel to track down an absent parent. We find the appellant's first argument without merit.

The appellant's other argument is that the lower court, by failing to follow certain statutory protections to ensure that a parent suspected of abuse receives a fair dependency hearing, violated appellant's Due Process rights. Namely, the trial court refused to afford the appellant access to the CYS files, thus violating 42 Pa.C.S.A. § 6307(2). Furthermore, appellant asserts that the trial court refused to issue a subpoena at the request of appellant for the CYS files, thus violating 42 Pa.C.S.A. § 6333. Appellant asserts that by failing to provide her access to the CYS records pursuant to these provisions, she was denied the ability to effectively defend against the charges, thus making the dependency hearing fundamentally unfair.

We agree that the trial court erred in failing to follow § 6333, which was designed to ensure a fair dependency hearing, and for this reason reverse and remand. However, we decline to address whether the refusal to provide appellant with the CYS file violated her due process rights. Two reasons persuade us that this would be prudent. First of all, well-settled principles of law militate that this Court should not decide a constitutional issue unless absolutely required to do so. *Krenzelak v. Krenzelak*, 503 Pa. 373, 381, 469 A.2d 987, 991 (1983); *Mt. Lebanon v. County Board of Elections, etc.*, 470 Pa. 317, 322, 368 A.2d 648, 650 (1977); *Coatesville Dev. v. United Food Wkrs.*, 374 Pa.Super. 330, 337, 542 A.2d 1380, 1383 (1988) (*en banc*). Since we believe that it is reversible error for a trial court to ignore § 6333, we are not required to address whether the failure to follow these provisions also violates Due Process in some way. Second, appellant's constitutional argument is more than somewhat vague,[2] the trial court

2. Appellant claims her 'statutory due process' rights afforded by the aforementioned provisions were violated by CYS and the trial court.

failed to write an opinion,[3] the appellee did not address appellant's constitutional argument other than to simply assert that any Constitutional violation was harmless,[4] and the record before us is incomplete.[5] Important constitutional questions should not be decided except after a hearing and upon a full record. *Braden v. University of Pittsburgh,* 477 F.2d 1, 4 (3rd Cir.1973) on remand 392 F.Supp. 118 (W.D.Pa.1975), affirmed, cause remanded 552 F.2d 948 (3rd Cir.1977) *(en banc).* Reasoned disposition would best be served if we do not address under these circumstances what could be a Constitutional issue of wide-ranging significance.

The only hint as to why the trial court denied appellant's request for the CYS file is found in the following exchange which occurred between Ms. Barr, appellant's lawyer, and the Court at the dependency hearing:[6]

Ms. Barr: I would ask the Court to [order the CYS records released] at this time.

The Court: What records are we talking about?

Ms. Barr: The records that they are using to make these children dependent. They are discoverable at this point in time.

Apparently, counsel believes that these provisions create a property interest in the CYS file, although it is hard to determine this from counsel's brief, since argument on this point is rather sparse and contains no reference to relevant precedent. We remind appellant that it is not the responsibility of this court to develop the appellant's argument.

3. Such a practice is expressly violative of Pa.R.App.Proc. 1925(a).

4. Appellee's brief rather simply argues, without citation of case or statute, that it does not believe there was anything in the CYS file that would have helped the appellant, and if there was, the trial court committed no error by not granting access to the file. (See *infra*).

5. Appellant has accurately complained that there exists obvious gaps in the transcript.

6. Although the appellee asserts baldly that the trial court committed no error, it fails to argue that 42 Pa.C.S.A. §§ 6307 and 6333 do not afford the protections appellant alleges they do. The tenor of appellee's argument is that under the circumstances the trial court acted appropriately. (See *infra*).

The Court: What records are we talking about, those that are protected by the Child Protective Services Act?

Ms. Barr: Those records that they are using to make the child dependent. If they are using those reports for the basis of their opinion to make the child dependent, at this point in time, they are discoverable. I don't think there is a distinction between CPSL at this point or [sic] not. This isn't an abuse proceeding.

The Court: Motion is denied.

(Transcript of December 27, 1990 hearing, pp. 36–37). Thus, the trial court apparently felt the Child Protection Services Law prevented the files from being released.[7]

A finding of dependency is adjudicated under the provisions of the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq. Fallaro v. Yeager,* 364 Pa.Super. 408, 415, 528 A.2d 222, 225 (1987); *In the Interest of R.M.R.,* 366 Pa.Super. 243, 258–9, 530 A.2d 1381, 1389 (1987); *In the Interest of M.B.,* 356 Pa.Super. 257, 262, 514 A.2d 599, 602. The Juvenile Act provides liberal access to court records and provides the opportunity for liberal discovery in a dependency or delinquency action. In pertinent part, 42 Pa.C.S.A. § 6307 reads:

Inspection of court files and records

All files and records of the court in a proceeding under this chapter are open to inspection by:

\* \* \* \* \* \*

(2) The parties to the proceeding and their counsel and representatives, but the persons in this category shall not be permitted to see reports revealing the names of confi-

7. The CPSL, 11 Pa.S.A. §§ 2201–2224, was repealed by Act of December 19, 1990. The statute was reenacted as Part VII of the Domestic Relations Code, 23 Pa.C.S.A. §§ 6301–6384 (Purdon Supp.1991). Although the arguments before this court were premised on the former statute, the only change in the statute seems to be its new location. Our holding will thus remain unaffected by the statute's repeal and reenactment. *See* 1 Pa.C.S.A. § 1962 (Purdon Supp.1991); *See also, In Interest of R.T.,* 405 Pa.Super. 156, 163 n. 2, 592 A.2d 55, 58 n. 2 (1991).

dential sources of information contained in social reports, except at the discretion of the court.

42 Pa.C.S.A. § 6333 reads in its entirety:

Subpoena

Upon application of a child, parent, guardian, probation officer, district attorney, or other party to the proceedings, the court, master, or the clerk of the court shall issue, or the court or master may on its own issue, subpoenas requiring attendance and testimony of witnesses and the production of papers at any hearing under this chapter.

The appellant's argument based on § 6307 fails because it is not apparent that the trial court had in its possession the CYS reports. That section only gives access to reports or files in the court's possession. While it may be that at dependency hearings a CYS typically submits abuse reports into evidence, here the record indicates that this was probably not the case.[8]

■ Appellant's argument based on § 6333, however, has merit. We note that § 6333 is not discretionary: "upon application of ... [a] party to the proceeding, the court *shall issue* subpoenas requiring ... the production of papers at any hearing under this chapter." (emphasis ours).[9] This rule, obviously, does not have a similar limitation to § 6307's which would restrict its application only to documents in the court's possession.

8. The record only indicates that appellant requested the reports at the December 21, 1990, hearing and appellee claimed not to have brought the reports to the hearing.

If a lower court does possess the CYS files, it is pertinent to note that § 6307 is not discretionary: the statute gives access to a party in a proceeding under the Juvenile Act to all files and records of the court. This was specifically intended to cover "social reports," such as the CYS reports at issue today. Access is only restricted by the limitation that "confidential sources of information" in the social reports could be suppressed at the trial court's discretion.

9. The only case interpreting the statutory interrelation of the Juvenile Act and § 2215 of the Child Protection Services Act supports this conclusion. *See In Re: Mary Kriner,* 43 Pa.D. & C.3d 559, 561 (1985).

Apparently, the trial court felt that the Child Protective Services Law mandated that the CYS file be kept confidential despite the liberal discovery requirements given by the Juvenile Act. Simply put, it seems the trial court believed the CPSL conflicts with and supersedes the Juvenile Act. However, "[w]hen laws pertain to the same subject matter, they should be construed, where possible, as one." *Royal Indem. Co. v. Adams*, 309 Pa.Super. 233, 244, 455 A.2d 135, 141 (1983); *accord, Girard School District v. Pittenger*, 481 Pa. 91, 100, 392 A.2d 261, 265 (1978); *see also* 1 Pa.C.S.A. § 1932. It is true that § 2214 of the CPSL mandates a broad requirement of confidentiality for reports of abuse. However, § 2215(a) & (b) contain numerous exceptions to § 2214's confidentiality requirement, two of which suggest that the requirement of confidentiality does not conflict with the Juvenile Act's requirements. Section 2215(a)(5) states that reports of abuse will be made available to "[a] court of competent jurisdiction pursuant to a court order." When read in conjunction with the requirement in 42 Pa.C.S.A. § 6333 that a court issue, upon application by an accused, a subpoena (a court order) for production of documents, no conflict is apparent between the two statutes.

We believe our interpretation is validated by another exception to § 2214's confidentiality requirement. Section 2215(b) provides that:

At any time and upon written request, a subject of a report may receive a copy of all information, except that prohibited from being disclosed by subsection (c), contained in the Statewide central register or in any report filed [pursuant to the CPSL's procedures].

Thus, appellant, a subject of the report,[10] would be entitled to a copy of all information in the report simply upon

10. The CPSL defines "[s]ubject of a report" as "[a]ny child reported to the central register of child abuse and a parent, guardian or other responsible person also named in the report." Code promulgated pursuant to the CPSL, similarly, defines it as "[a] child reported to [the central register] and his parent, guardian, other person responsible or other perpetrator named in the report." 55 Pa.Code § 3490.4.

written request. Subsection (c) of § 2215 specifies that the only qualification of this entitlement is that data that might reveal the identity of a person who either reported or cooperated with the report would be kept confidential unless it was first determined that the information would not be detrimental to the safety of that person.[11]  Given that a subject of a report can obtain a copy of information simply by filing a written request with the local CYS,[12] we submit that § 2215(a)(5)'s reference to a court order must be appropriately broadly construed to include subpoenas.[13]

Appellant rightly brings to our attention and appropriately distinguishes a seemingly similar case which dealt with restriction of access to a CYS file.  In *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), a father was charged criminally with various charges relating to alleged sexual abuse of his minor daughter.  He subpoenaed the CYS records which pertained to his daughter, hoping to find exculpatory evidence.  The CYS refused the father access to the file, relying on the provisions of the CPSL.  The trial court, after reviewing most of the CYS file, refused to order a disclosure.  After the father's subsequent jury trial and conviction, he appealed on the grounds that the failure to disclose the file violated the Confrontation Clause of the Sixth Amendment, as made applicable to the states by the Due Process Clause of the Fourteenth Amendment.  After our Superior Court and Supreme Court had addressed the issue, the United States Supreme Court accepted *certiorari*.  Although unable to agree on whether depriving the father access to the files violated the Confrontation Clause, five members of the Court agreed that the Fourteenth Amendment required some disclosure of

11.  This requirement bears strong resemblance to a similar provision in § 6307 of the Juvenile Act.

12.  Although the CPSL does not state to whom the written request must be made, 55 Pa.Code § 3490.104 specifies that it can be filed with, *inter alia,* the Child Protective Services section of a local CYS.

13.  As our decision rests on other grounds, we do not decide whether the subpoena, itself, constituted a "written request" within the meaning of § 2215(b).

records, but the requirement was limited to the trial court reviewing the records *in camera* and deciding whether the file contained evidence that would change the outcome of trial.

The Supreme Court decision in *Pennsylvania v. Ritchie* is fundamentally different than the case *sub judice*. In *Ritchie*, a criminal defendant who had no statutory right to the CYS file argued that under the United States and Pennsylvania Constitutions he should be given access to the file. *Ritchie* defined the arguably limited extent to which the United States Constitution required that such access be given to a criminal defendant. However, the appellant in this proceeding argues that she has a statutory right to the CYS file. As a state legislature can grant greater access to state agency files than the Constitution mandates, *Ritchie* is not dispositive. It is easier to receive CYS records in a dependency or delinquency hearing than in a criminal prosecution of an adult for child abuse, because the Juvenile Act makes it easier.

Although we do not decide this case on Constitutional grounds, we are concerned that the trial court ignored a provision which was meant to ensure that a dependency finding is merited. A parent's interest in the care, custody and management of their children is a fundamental liberty interest protected by the Fourteenth Amendment. *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed 2d 599 (1982). The Fourteenth Amendment's Due Process Clause militates that when a State moves to terminate the familial bonds between parent and child, it must provide the parent with fundamentally fair procedures. *Id.* 42 Pa.C.S.A. § 6307(2) and 42 Pa.C.S.A. § 6333 are provisions aimed at ensuring that a parent is fairly treated. The provisions allow a parent charged with abuse to adequately prepare for the dependency hearing. *Cf. In Interest of Leslie H.,* 329 Pa.Super. 453, 457, 478 A.2d 876, 878 (1984). By ignoring § 6333, the appellant was forced to defend against the allegations of abuse blindly. We feel it is reversible error for a court to ignore these provisions which the

legislature has designed to ensure the familial bond is not separated without cause.

Counsel for the Susquehanna CYS asserts that no error occurred because the trial court's order mandated a seemingly judicious and equitable solution to the difficult situation of alleged parental child abuse. The appellant and her boyfriend were moved to an apartment downstairs and were given liberal visitation rights (twice daily). An aunt of the children was given supervisory responsibility over the children, who remained in the apartment upstairs. The Susquehanna CYS monitored the situation, and eventually the children were given back to the appellant.

Notwithstanding the protestations of the CYS that the trial court did an outstanding job of balancing the interests of the children and the accused parents *after* a finding of dependency, we think the better view is that the protections of the Juvenile Act must be met *before* a dependency finding can be made. We have repeatedly emphasized the importance of adhering to the legislatively-mandated procedures in a dependency hearing. *See, e.g., Fallaro, supra,* 364 Pa.Superior Ct. at 424, 528 A.2d at 230 ("[C]ourts must adhere to the procedures developed for resolution of the various problems which arise concerning the welfare of children."); *Leslie H., supra,* 329 Pa.Superior Ct. at 457, 478 A.2d at 878.

We reverse and vacate the finding of dependency.

Jurisdiction is relinquished.