**COMMONWEALTH of Pennsylvania**

v.

**Keith Lewis MOUNTAIN, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 15, 1998.

Filed April 3, 1998.

Joseph P. Burt, Erie, for appellant.

Marshall Piccinini, Asst. Dist. Atty., Erie, for Com., appellee.

Before TAMILIA, JOHNSON and BROSKY, JJ.

TAMILIA, Judge:

Keith L. Mountain appeals from the February 21, 1997 judgment of sentence imposing a fourteen and one-half (14–1/2) to twenty-nine (29) year term of imprisonment. Following a January 1997 jury trial, appellant was found guilty of rape,[1] indecent assault,[2] unlawful restraint[3] and simple as-

---

**1.** 18 Pa.C.S. § 3121.

**2.** *Id.,* § 3126.

**3.** *Id.,* § 2902.

sault.[4] The record reveals the following facts.

On the evening of May 27, 1996, appellant was visiting with the victim and the victim's boyfriend, appellant's brother. At the end of the evening, the victim requested both her boyfriend and appellant leave. The two left and the victim went to sleep. Appellant, however, returned around midnight claiming to have left something inside the victim's apartment earlier that evening. Appellant then initiated a conversation with the victim regarding her relationship with his brother. When the victim told appellant to leave, he refused, began making lewd remarks to the victim and became physically abusive when the victim rejected his advances. When she continued to demand that he leave, appellant cornered the victim, punched her in the face, choked her with his hands and placed a pillow over her face. Appellant then raped the victim and fled the apartment.

As discussed previously, a jury found appellant guilty of rape, indecent assault, unlawful restraint and simple assault. Having been convicted of rape, appellant was automatically subject to the provisions of Pennsylvania's Megan's Law[5] requiring him to register a current address with the Pennsylvania State Police for ten years upon release from incarceration or upon parole from a state or county correctional institution. 42 Pa.C.S. § 9793, **Registration of certain offenders for ten years**. Upon review of reports prepared by the State Board to Assess Sexually Violent Predators, the sentencing court agreed with the reports' conclusion appellant did not fit the profile of a "sexually violent predator" as defined at section 9792 and as expounded upon at section 9794 of Megan's Law. Having been classified as a "sexual offender" as opposed to a "sexually violent predator", appellant's registration information is disseminated only to local law enforcement officials by the Pennsylvania State Police. We note the registration and notification requirements for sexually violent predators are much more broad. *VanDoren v. Mazurkiewicz*, 695 A.2d 967 (Pa. Commw.1997); 42 Pa.C.S. §§ 9794–9798.

On appeal, appellant raises the following three issues challenging Megan's Law.

1. Did the "Notification Upon Parole" portion of the sentence violate the due process clause of the Fourteenth Amendment to the U.S. Constitution and Article I, § 9 of the Pennsylvania Constitution in that: A) the statute allows Mr. Mountain to be rendered a social pariah, with a chill cast upon his exercise of his right to associate with others as a functioning member of society; and B) the statute, via a mere conviction, creates an irrebuttable presumption that Mr. Mountain is within a class of people whose rights may otherwise constitutionally be so curtailed?

2. Did the statute violate Mr. Mountain's right to privacy?

3. Did the "Notification Upon Parole" portion of the sentence violate Article I, §§ 9 & 10 of the U.S. Constitution and Article I, § 18 of the Pennsylvania Constitution in that it operates as a bill of attainder?

(Appellant's Brief, p. 4.)

■ Specifically, these inartfully posed challenges to the registration requirements of Megan's Law raise claims as to federal and state due process violations, invasion of privacy, and federal and state constitutionally prohibited bills of attainder. We address each of these challenges bearing in mind "[a] statute will not be invalidated unless there is a clear, palpable and plain demonstration that the statute violates a constitutional provision." *Commonwealth v. Rishel*, 441 Pa.Super. 584,, 658 A.2d 352, 354 (1995), *citing Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308 (1992).

■ Appellant's due process argument, as set forth in his brief, is illogical, vague and confusing. Appellant suggests his convictions automatically subject him to the registration requirements of Megan's Law. He is correct; however, he makes no substantive argument thereafter invoking federal due process rights pursuant to either the Fourteenth Amendment of the United States Con-

---

4. *Id.*, § 2701.

5. 42 Pa.C.S. § 9791 *et seq.*

stitution or state due process rights pursuant to Article 1, § 9, of the Pennsylvania Constitution. Upon reading appellant's brief, one may conclude appellant intends to argue a substantive due process deprivation in that he contends he will be socially exiled as a result of the registration requirement or a procedural due process deprivation in that appellant is required to register with Pennsylvania State Police without the benefit of some prior judicial proceeding. (*See* Appellant's Brief, pp. 8–9.) Regardless of whether appellant intended one or both of these theories to be the foundation for his due process challenge, in the interests of judicial economy we have examined both and found neither presents a meritorious argument.

■ It is beyond cavil that in order to successfully assert a due process claim, one must have been deprived of something, be it a physical item or personal right. "The threshold inquiry in any due process analysis is whether there exists any identifiable property or liberty interest at issue." *Stone and Edwards Insurance Agency v. Department of Insurance,* 161 Pa. Commw. 177, n. 28, 636 A.2d 293, 302 n. 28 (1994). In the instant matter, appellant anticipates being treated as a social outcast upon release from incarceration. First of all, how appellant may be treated in 14–1/2 to 29 years is purely speculative. Secondly, even if appellant finds himself alienated from society, appellant has not and cannot present any evidence suggesting alienation would result from the registration requirement.

Statistical evidence gathered in New Jersey indicates adverse repercussions reportedly experienced by convicted offenders have little connection to the applicable notification requirements. *E.B. v. Verniero, et al.,* 119 F.3d 1077, 1088–1089 (3rd Cir.1996), *cert. denied, W.P. et al. v. Verniero,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998).[6] A similar statistical survey conducted by the Oregon Department of Corrections in January 1995 revealed "[l]ess than 10% of offenders experienced some form of harassment."

*Id.* at 1090 (citations omitted). In addition, a Washington State review of community notification between March 1990 and March 1993 found of the 176 notifications completed, there were only 14 reported incidents of harassment. *Id.* at 1089 (citations omitted). The value of examining the above statistics from other jurisdictions is two-fold. First, it suggests the unlikelihood a person subject to Pennsylvania's Megan's Law would be adversely affected by the statute's requirements, and secondly, it serves to vitiate the argument appellant, as a sexual offender subject only to registration requirements, would suffer social harm by merely providing his registration information to law enforcement, for it is apparent even when subject to broad public notification requirements, few offenders realize an adverse social effect.

Section 9793 provides in pertinent part as follows:

### § 9793. Registration of certain offenders for ten years

(a) **Registration.**—A person convicted of any of the offenses set forth in subsection (b) shall be required to register a current address with the Pennsylvania State Police upon release from incarceration, upon parole from a State or county correctional institution, upon the commencement of a sentence of intermediate punishment or probation.... The offender shall inform the Pennsylvania State Police within ten days if the offender changes residence. The offender shall register with a new law enforcement agency no later than ten days after establishing residence in another state. The period of registration shall be ten years.

This Court recently addressed the issue of whether the registration requirement of Megan's Law is constitutional in *Commonwealth v. Gaffney,* 702 A.2d 565 (Pa.Super.1997). In *Gaffney,* the defendant presented an ex post facto challenge arguing the registration re-

6. In that the United States Supreme Court recently had this opportunity to address the constitutionality of Megan's Law, although it may not be presumed that the issues posed in the case sub judice are thereby resolved as to their constitu- tionality, it can be assumed that the underlying rational basis for the creation and application of Megan's Law has withstood preliminary Supreme Court scrutiny.

quirement was, in effect, a subsequent and more harsh punishment for his crimes. The *Gaffney* court analyzed this issue in light of the three-prong test set forth in *Artway v. Attorney General*, 81 F.3d 1235 (3rd Cir. 1996), as modified in *E.B. v. Verniero, supra.* The *Artway/Verniero* test is designed to determine whether a legislative act qualifies as punishment.

█ A statutory provision will be considered punishment if "(1) the legislature's actual purpose is punishment, (2) if the 'objective' purpose is punishment, or (3) if the effect of the statute is so harsh that 'as a matter of degree' it constitutes punishment. *Gaffney, supra* at 567, *citing Verniero, supra.* In 1996, the registration provisions of the New Jersey's Megan's Law were found to be non-punitive and were upheld by the Third Circuit as constitutional. *Artway, supra* at 1267. In *Gaffney*, this Court adopted the *Artway/Verniero* test and conducted a careful comparison of the New Jersey registration provisions and Pennsylvania's 42 Pa.C.S. § 9793. This Court found "no meaningful difference between their respective registration provisions". *Gaffney, supra* at 568. Moreover, the provisions are "essentially indistinguishable" with respect to their policy objectives, coverage qualifications and sanctions. *Id.*

Lastly, the *Gaffney* court discussed the unobtrusive nature of section 9793.

> [T]he only information which appellant must provide is his current address. *See* 42 Pa.C.S.A. § 9793(a). Appellant's address is only given to the Pennsylvania State Police, who forward it to the chief law enforcement officer in the municipality where the appellant resides. *See id.* at § 9793(c). This information is to be periodically confirmed via a nonforwardable known address. *See id.* at § at 9796(a). We fail to see any harsh effects, other than a momentary inconvenience, that could result from appellant's complying with these registration provisions.

*Id.* at 569. "[A]ny detrimental effects of the registration provisions of Megan's law are incidental to their salutary purpose and operation." *VanDoren, supra* at 976. It is apparent upon review of the record appellant fails to recognize the severity of his crime. Appellant raped and brutally assaulted his brother's girlfriend. As evidenced by his testimony at time of sentencing, appellant has not taken responsibility for his actions. His arguments on appeal suggesting the registration requirements of Megan's Law are unfair also indicate his failure to recognize the severity of his conduct.

On July 29, 1994, Megan Kanka, a 7–year–old child, was abducted, raped and murdered by a man who lived across the street from the Kanka family. Unbeknownst to the Kankas, members of the community or local police, Megan's murderer was a twice-convicted sexual offender whose previous offenses also were against young girls. By May of 1996, 49 states, including Pennsylvania, had adopted sexual offender registration laws. *E.B., supra* at 1081. Pennsylvania's Megan's Law, like versions of Megan's Law enacted in other jurisdictions, seeks to protect not only our young children but also ourselves. While our grief and outrage is at its highest when confronted with an offense against a child, as well it should, this in no way vitiates the horror felt by our society when sexual offenses are committed against adults. Those registration provisions of Megan's Law applicable to appellant serve to protect our society against just such domestic terrorism.

In addition, we note "a registration requirement is perhaps the least burdensome among the various modes of regulation a state may seek to impose." *Commonwealth v. National Federation of the Blind*, 18 Pa. Commw. 291,, 335 A.2d 832, 835 (1975), *aff'd* at 471 Pa. 529, 370 A.2d 732 (1977) (In personam jurisdiction existed over an out-of-state charitable organization which failed to comply with the registration requirements for solicitation in Pennsylvania.). Based upon the foregoing, we find no merit to appellant's substantive due process claim.

Next, we look to see whether appellant has presented a valid procedural due process claim. Appellant's argument a hearing should have been held prior to imposition of the Megan's law registration provision is without merit. It is now well-established in this Commonwealth the registration provision of Megan's law is a non-punitive

measure with only the very slightest inconvenience to the defendant and the overwhelmingly policy objective of assuring public safety. *VanDoren, supra*; *Gaffney, supra*. Moreover, it is unclear what appellant would hope to gain through a pre-Megan's Law hearing. His guilt already has been determined, his sentence imposed and no further penalty attaches by way of the registration provisions. "The requirements of procedural and substantive due process apply to the deprivation of a property or liberty interest." *Social Services Union v. Dept. of Public Welfare*, 699 A.2d 807, 812 (Pa.Commw.1997), *citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698 (1977); *Stone and Edwards Insurance Agency, supra*. Moreover, reputational damage alone has been held to be insufficient to trigger a procedural due process claim. *Artway, supra* at 1268–1269, *citing Paul v. Davis*, 424 U.S. 693, 701, 701–703, 96 S.Ct. 1155, 1160–1161, 47 L.Ed.2d 405, 414 (1976). Upon review of the facts, we find appellant is unable to assert either a substantive or procedural due process claim as there is no property or liberty interest of which appellant has been deprived by application of section 9793 of Megan's Law.

In addressing appellant's argument the provisions of Megan's law invade his privacy rights, we examine the information appellant is required to divulge pursuant to Megan's Law. Appellant is required to provide Pennsylvania State Police with his current address for ten years following his release from incarceration, parole or probation. The offender's name, fingerprints, photograph, offense history and identifying factors are included in the information provided to Pennsylvania State Police. Pennsylvania State Police then forward the address information only to the local law enforcement in the municipality in which the appellant resides. 42 Pa.C.S. § 9799.2, **Duties of Pennsylvania Board of Probation and Parole;** 42 Pa.C.S. § 9795(b)(4), **Registration of Offenders**. Once a year, appellant must simply verify his address with Pennsylvania State Police. 42 Pa.C.S. § 9796(b), **Verification of residence—Annual verification**. Appel-

lant's interest in avoiding disclosure of this information is clearly outweighed by the Commonwealth's compelling interest in public safety. The Commonwealth has a vital interest in protecting its citizens from harm. *Commonwealth v. Blouse*, 531 Pa. 167, 170–172, 611 A.2d 1177, 1179 (1992) (*Blouse* dealt with the regulation of motorists to ensure highway safety). Moreover, "[p]ersons found to have committed [the offenses set forth at § 9793(b)] have a reduced expectation of privacy because of the public's interest in public safety and the effective operation of government." 42 Pa.C.S. § 9791(a)(5), **Legislative findings and declaration of policy**. Registration requirements carry only a slight burden in comparison with other regulatory measures imposed by the Commonwealth. *National Federation of the Blind, supra*. Balancing the unobtrusive registration provision of Megan's Law with the Commonwealth's compelling interest in public safety, we find the momentary inconvenience of disclosing the above-described information to police is greatly outweighed by the need to ensure public safety.

Finally, appellant contends Megan's Law functions as a bill of attainder in violation of Article I, Sections 9 and 10, of the Constitution of the United States and Article I, Section 18, of the Pennsylvania Constitution. "A bill of attainder is defined as a legislative enactment which determines guilt and inflicts punishment upon an identifiable person or group without a judicial trial." *Commonwealth v. Scheinert*, 359 Pa.Super. 423, 429, 519 A.2d 422, 425 (1986), *alloc. denied*, 517 Pa. 606, 536 A.2d 1330 (1987), *citing Nixon v. Administrator of General Services*, 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867, 907 (1977). As previously discussed, Megan's Law does not adjudicate guilt nor does it inflict punishment and, therefore, cannot constitute a bill of attainder. *Gaffney, supra*. Appellant's bill of attainder argument is, therefore, without merit.

In addition to his challenges to Megan's Law, appellant argues his sentence is manifestly excessive and unreasonable, particularly in its consecutiveness. Upon examination

of the record, however, it is clear appellant was sentenced within the aggravated range of the sentencing guidelines for his offenses.

[A]ppellant does not have an appeal as of right from the discretionary aspects of his sentence. Two requirements must be met before appellant's challenge to the judgment of sentence will be heard on the merits. First appellant must 'set forth in his brief a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence.' Second, the appellant must show 'that there is a substantial question that the sentence imposed is not appropriate under this chapter.' This Court has held that a claim of excessiveness of sentence does not raise a substantial question where the sentence is within the statutory limits.

*Commonwealth v. Coss*, 695 A.2d 831, 833 (Pa.Super.1997) (citations omitted).

█ Despite appellant's attempts to assert an argument the trial court focused on impermissible factors in fashioning the sentence, the record, specifically the sentencing transcript, demonstrates the court's very clear understanding of the guidelines and consideration of all factors relevant to sentencing (S.T., 2/21/97, pp. 34–43). The sentencing court's reasons for imposing the maximum statutory sentence were set forth on the record prior to sentencing and include the following:

1. the trial record,
2. the presentence report,
3. the Victim Impact Statement,
4. the testimony of witnesses at sentencing,
5. appellant's poor conduct while incarcerated,
6. appellant's failure to take responsibility for the offenses, and
7. that based upon all the evidence, the appellant is a very clear and present danger to the community.

*Id.* Accordingly, appellant's sentencing challenge fails to set forth a substantial question for our review.

Judgment of sentence affirmed.

Concurring Opinion by Johnson, J.

JOHNSON, Judge, concurring:

I concur in the result reached by the Majority in this case.

I also agree with the Majority that the appellant's brief is composed of "inartfully posed challenges" to the constitutionality of Megan's law. Op. at 475. As the Majority notes, appellant's arguments are "illogical, vague, and confusing." *Id.* at 475. Thus, this Court is left with the task of deciphering exactly what the appellant is attempting to assert. It is for this reason that I write separately to express my concern regarding the Majority's decision to fully address appellant's due process and right to privacy claims.

Specifically, I am concerned that the Majority, in attempting to make sense of appellant's claims, has decided issues of wide-ranging significance that are not adequately developed or presented in appellant's brief. Pa.R.A.P. 2119. For example, the appellant phrases his first issue as follows:

The "notification provision upon parole" portion of the sentence did violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and Article I, § 9 of the Pennsylvania Constitution in that: A) the statute allows Mr. Mountain to be rendered a social pariah, with a chill cast upon his exercise of his right to associate with others as a functioning member of society; and B) the statute, via a mere conviction, creates an irrebuttable presumption that Mr. Mountain is within a class of people whose rights may be so curtailed.

Brief for Appellant at 8. Appellant then baldly asserts, without any further development, that the following rights have been violated: (1) his "post-parole right to freedom of association ('chilling it' by means of the stigma created)" and (2) his right to "privacy (by 'reaching out' with the clear intent of prompting surveillance and/or monitoring)." *Id.* at 9. With respect to his right to privacy issue, appellant asserts interests in: (1) avoiding disclosure in private matters and (2) being free from unwarranted govern-

mental intrusion. *Id.* at 10. He then urges this Court "to vacate the 'notification/registration' upon parole requirement." *Id.* at 9–10.

Based upon my review of the appellant's brief, I find that the appellant attempts to challenge both the notification *and* registration provisions of Megan's law. *See* 42 Pa. C.S. §§ 9793 (registration of certain offenders for 10 years) and 9798 (other notification). However, appellant only has standing to challenge the registration provision of Megan's law since he was not classified as a "sexually violent predator" and, therefore, is not subject to the notification provisions. *See id.* § 9794. Thus, our review of appellant's claim is limited to his challenges to the registration provision.

With this in mind, it is clear that while appellant has cited a number of constitutionally protected rights in his brief, he has failed to show us how *his* constitutional rights have been violated by the registration provision. At most, the interests found in appellant's brief are better suited for a challenge to the notification provision, which is not properly before us. More importantly, appellant's claims are not supported by any reference to pertinent legal authority. Instead, appellant's argument for these issues consists of a rambling, unintelligible narrative. Therefore, because I find that appellant has neither articulated an identifiable liberty or property interest, nor asserted a "legitimate expectation of privacy" with respect to the registration provisions, I would end our analysis of these issues here and find that appellant's constitutional challenges must instantly fail. *See County of Berks v. PLRB*, 544 Pa. 541, 548–550, 678 A.2d 355, 359 (1996) (where appellant failed to identify what life, liberty or property interest had been deprived by PLRB determination, due process claim failed); *Commonwealth v. Blystone*, 519 Pa. 450, 462–464, 549 A.2d 81, 87 (1988), *aff'd*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) (to determine whether appellant's activities fall within the right of privacy, appellant's privacy expectation must be one that society is prepared to recognize as reasonable).

The Majority, however, attempts to speculate as to whether the appellant is asserting a substantive or procedural due process claim and then proceeds to fully develop both before finding these claims lack merit. Op. at 475–478. The Majority also determines that the inconvenience of registration is "greatly outweighed by the need to ensure public safety." *Id.* at 478. I do not believe such a due process analysis is warranted in this instance; nor should we employ judicial balancing of interests where the appellant fails to show us how his privacy rights have been violated.

This Court has long held that we will not act as appellant's counsel. *In re J.C.*, 412 Pa.Super. 369, 603 A.2d 627, 629 n. 2 (1992). This is especially so where, as here, the issues are of wide-ranging significance. *See id.* (where appellant's due process argument was sparse and contained no reference to relevant precedent, court declined to address appellant's constitutional issue). Unlike the Majority, I find that the state of appellant's brief makes it extremely difficult for us to properly review the merits of this case, let alone allow us to thoroughly address these issues of first impression. I believe that a proper resolution of these issues would be best left for another case where a litigant has properly developed an argument in support of his claims. *Id.* Thus, while I join the Majority with respect to the result reached, I believe this case should have been decided on much simpler and narrower grounds. Specifically, the appellant has failed to show this Court how his constitutional rights were violated by the registration provision and, therefore, his claim must fail.