611 A.2d 1177

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael G. BLOUSE, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 11, 1992.

Decided June 17, 1992.

168

John James Mooney, III, Hanover, for appellant.

H. Stanley Rebert, Dist. Atty., Janice Martino–Gottshall, Gerald A. Lord, Deputy Prosecutors, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Appellant, Michael G. Blouse, was apprehended at a roadblock on State Route 216 in York County. The roadblock was authorized and conducted by the Penn Township Police Department. Its purpose was to detect license, registration and equipment violations. Appellant was subsequently convicted of operating a motor vehicle while his license was under suspension.

Appellant now appeals from an order of the Superior Court, 390 Pa.Super. 650, 561 A.2d 816, affirming the judgment of sentence of the Common Pleas Court of York County imposing a fine of two hundred dollars for operating a motor vehicle while his license was under suspension.

At issue is the constitutionality of systematic, non-discriminatory, non-arbitrary roadblocks for the purpose of insuring safety on our highways by disclosing registration, licensing and equipment violations. We believe that systematic roadblocks are constitutional under the Pennsylvania Constitution, and that the balancing of interests approach is the appropriate method for determining reasonableness under Article I, Section 8 of the Pennsylvania Constitution.

It is undisputed that the stopping of an automobile and the detention of its occupants is a seizure subject to constitutional restraints. *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973). Article I, Section 8, of the Pennsylvania Constitution prohibits "unreasonable searches and seizures." In order to determine the reasonableness of a particular search or seizure a balancing analysis is utilized, wherein the intrusion on the individual of a particular law enforcement practice is balanced against the government's promotion of legitimate interests. *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *United States v.*

*Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116; *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973). A central concern in balancing the opposing interests is protecting the individual from arbitrary invasions at the unfettered discretion of the officers in the field. *Brown v. Texas,* 443 U.S. at 50–51, 99 S.Ct. at 2640, 61 L.Ed.2d at 362.

In *Commonwealth v. Johnston,* 515 Pa. 454, 530 A.2d 74 (1987), we expressly approved the balancing of interests approach in limited situations.[1] We concluded in *Johnston* that, in the canine sniff search situation, the balancing of interests tipped in favor of the government, and permitted the search even though based on less than probable cause. The systematic roadblock situation is one of the few situations worthy of the balancing of interests approach to determine the reasonableness of a seizure based on less than probable cause. The balancing of the need to seize against the invasion which the seizure entails is appropriate in this type of situation, because the probable cause requirement would be wholly inadequate to satisfy the goal sought to be achieved, and there is no other way to obviate this type of harm.

In *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), in the Opinion Announcing the Judgment of the Court, the plurality upheld the constitutionality of sobriety checkpoint roadblocks carried out in compliance with prescribed guidelines. To reach that result, the plurality applied the balancing of interests approach and concluded that the minimal intrusion on the individual was outweighed by the compelling public interest in apprehending drunk drivers. The plu-

---

1. In *Johnston* we held that, when determining whether there was a search, the balancing of interests approach was appropriate only in cases "analytically similar to *Terry*". *Commonwealth v. Johnston,* 515 Pa. at 463, 530 A.2d at 78. See *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We found that the circumstances of the canine sniff search in that case lacked the exigencies of *Terry* and therefore, the balancing test was inappropriate *to determine whether there was a search.* But once we concluded that a search had occurred, we found "the balancing inquiry appropriate to determine whether this particular kind of search in these circumstances necessarily implicates the full-blown warrant requirements of other police searches". *Johnston,* 515 Pa. at 464, 530 A.2d at 79. Thus, we approved the balancing approach as a measure of the reasonableness of a particular search.

rality, however, concluded that the police exceeded their authority as delegated by the legislature in conducting the roadblock in question. Although only one justice joined the *Tarbert* opinion in full, it is clear that of the six who participated, four expressed the view that systematic roadblocks are constitutional.[2] Therefore, *Tarbert* provides significant authority for this case.

In applying *Tarbert* to the case *sub judice*, the rationale behind upholding the constitutionality of drunk driving roadblocks applies equally to all systematic roadblocks, where the compelling interest of the state in protecting its citizens from harm, i.e. the mass carnage that results from unlicensed drivers and unsafe vehicles occupying the road, outweighs the privacy interests of the individual. In this case, the state has a vital interest in maintaining highway safety by ensuring that only qualified drivers are permitted to operate motor vehicles, and that their vehicles operate safely, thus assuring that dangerous drivers as well as dangerous automobiles are kept off the road. The intrusion upon the individual is minimal where the roadblock is conducted in accordance with specific enumerated guidelines, eliminating the discretion that is problematic in random traffic stops. Lastly, the risk of detection, both actual and perceived, will provide an effective deterrent to Motor Vehicle Code violations. To this end, Sergeant Gilbert testified that during the three hour period that the roadblock was conducted, 27 violations were detected, thus evidencing the advancement of the legitimate interests it was

---

2. Mr. Justice McDermott joined Chief Justice Nix in Announcing the Judgment of the Court. Mr. Justice Papadakos, in a concurring opinion, agreed with the conclusion that non-discriminatory, systematic roadblocks by the police under well-defined parameters are constitutional, but declined to join the opinion because he believed the Court should not have addressed the constitutional issues. It is clear from my dissenting opinion in *Tarbert* that I agreed with the plurality's finding concerning the constitutionality of systematic roadblocks. Mr. Justice Flaherty concurred in the result without explanation. Mr. Justice Zappala filed a concurring opinion in which he found the roadblocks unconstitutional because conducted without probable cause. The views of Chief Justice Nix, Mr. Justice McDermott, Mr. Justice Papadakos and myself, as expressed in the *Tarbert* decision are evidence of this Courts willingness to uphold the constitutionality of systematic roadblocks.

designed to serve (N.T. 3/23/88, p. 45). In this type of case, the public interest cannot be met by less intrusive means, because traditional law enforcement procedures, such as stops based on a probable cause or reasonable suspicion standard, are incapable of detecting status offenses as opposed to observable offenses.

In *Tarbert*, the following guidelines were suggested by the plurality to ensure constitutionality under the Pennsylvania Constitution:

> [T]he conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. First the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be travelled by intoxicated drivers. The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

*Tarbert*, 517 Pa. at 293, 535 A.2d at 1043.

Substantial compliance with the guidelines is all that is required to reduce the intrusiveness of the search to a constitutionally acceptable level. *Tarbert*, 517 Pa. at 293, 535 A.2d at 1043.

In response to the guidelines set forth in *Tarbert*, the legislature amended 75 Pa.C.S.A. § 6308(b) to provide:

(b) Authority of a police officer.—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has articulable and reasonable grounds to suspect a violation of this title, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title. As amended 1983, July 22, P.L. 122, No. 32, § 4, imd. effective; 1985, June 19, P.L. 49, No. 20 § 10, effective in 60 days.

75 Pa.C.S.A. § 6308(b).

The roadblock in this case was carried out pursuant to 75 Pa.C.S.A. § 6308(b). We now adopt the guidelines set forth in *Tarbert*, because they achieve the goal of assuring that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. See, *Brown v. Texas, supra.* Applying the guidelines set forth in *Tarbert* to the present case, we conclude that the roadblock in question was conducted in a constitutionally acceptable manner. The police shift commander testified that the roadblock was conducted pursuant to a written departmental policy. (N.T. 3/23/88, p. 5). In accordance with this policy, the shift commander authorized the roadblock in question. At the scene of the roadblock, warning flares were placed in both directions and every car in both directions was stopped. The decision where to place the roadblock was based on the large number of license, equipment and inspection violations which were detected during evening hours while carrying out other routine stops. (N.T. 3/23/88, p. 9–10). Based upon the foregoing, the roadblock was conducted in substantial compliance with the *Tarbert* guidelines, and thus, in a constitutionally acceptable manner under Article I, Section 8 of the Pennsylvania Constitution.

We conclude, therefore, that systematic, non-discriminatory, non-arbitrary roadblocks are constitutional under the Pennsylvania Constitution and that 75 Pa.C.S.A. § 6308(b), authoriz-

ing such roadblocks, does not offend our constitution. Since the roadblock in question was conducted in accordance with the guidelines prescribed in *Tarbert*, it was carried out in a constitutionally acceptable manner. Accordingly, the order of the Superior Court is affirmed.

PAPADAKOS, J., joins this opinion and files a concurring opinion.

FLAHERTY, J., files a dissenting opinion joined by ZAPPALA and CAPPY, JJ.

ZAPPALA, J., files a dissenting opinion joined by FLAHERTY and CAPPY, JJ.

PAPADAKOS, Justice, concurring.

I most reluctantly agree and join with the majority in concluding that systematic, non-discriminatory, non-arbitrary roadblocks are constitutional under the Pennsylvania Constitution and that 75 Pa.C.S. § 6308(b), authorizing such roadblocks, does not offend our constitution. I indicated as much in my concurring opinion in *Commonwealth v. Tarbert* 517 Pa. 277, 535 A.2d 1035 (1987).

My reluctance arises from a concern over the manner in which the police will comport themselves with the traveling public while conducting these roadblocks. The traveling public may have to yield to this type of minimal intrusion in the balancing of interests approach. But the public has a right to be free from abusive intrusion. All too often complaints arise that the police get carried away and abuse their authority in such mass detection efforts.

I will closely watch the scene with the assurance that the police will conduct themselves in a courteous, professional manner as is usually their wont. Any other conduct will not be condoned and this matter will be reconsidered. For the most part in these roadblocks, the police will be dealing with law-abiding citizens and not wanted felons. I hope the police keep this uppermost in their minds.

FLAHERTY, Justice, dissenting.

The majority holds that a warrantless seizure without probable cause was proper under Pennsylvania law. I respectfully dissent because I believe the Pennsylvania Constitution provides greater protection from warrantless searches and seizures than the majority concedes.

I believe that *Commonwealth v. Johnston*, 515 Pa. 454, 463–64, 530 A.2d 74, 78–79 (1987), controls this case. We held in *Johnston* that a balancing approach, weighing the competing individual and governmental interests in order to determine whether an unreasonable search or seizure had occurred, was only appropriate in a *Terry* situation.[1] The *Johnston* search—a narcotics sniff search by a trained dog—was subjected, not to a balancing test, but to a determination of probable cause. The police in *Johnston* had articulable facts on which they based their belief that narcotics were present in the place where they conducted the canine sniff search. We clearly held in *Johnston*: "[T]he present case lacks the exigencies which were so important in *Terry*, and for that reason, the determination of whether there was a search cannot be made by balancing the privacy interests of the individual against the law enforcement objectives of government." *Commonwealth v. Johnston*, 515 Pa. at 463–64, 530 A.2d at 79. We intentionally rejected the Fourth Amendment analysis of the majority of the United States Supreme Court in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), and held instead that the Article I, § 8 of the Pennsylvania Constitution provides greater protection than the federal Fourth Amendment. *See Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983). Although the court conducted a balancing test to determine whether the warrantless search was constitutional, we determined that the search was permissible because "the

---

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry* permitted a police officer, who had seen what he regarded as suspicious behavior which signaled the possibility of an imminent criminal act, to make a brief warrantless investigatory stop and a self-protective pat-down of the outer garments of the suspect. This procedure was justified only in those exigent circumstances where an officer's trained observations called for immediate action which could not be subjected to the warrant procedure.

police [we]re able to articulate reasonable grounds for believing that drugs may be present in the place they" searched. *Commonwealth v. Johnston,* 515 Pa. at 463–64, 530 A.2d at 79. Although we held that the canine sniff search did not "implicate the usual warrant requirements characteristic of police searches of private areas" or "the fullblown warrant requirements of most other police searches," *id.,* it was essential that the warrantless search was based on probable cause to determine that the search was reasonable under the Pennsylvania Constitution, Article I, § 8.

Therefore the systematic roadblock at issue in this case was a seizure under Pennsylvania constitutional law, and Article I, § 8 requires that all searches and seizures must be based on probable cause. *Commonwealth v. Johnston,* 515 Pa. at 461–62, 530 A.2d at 77, quoting Mr. Justice Brennan, dissenting, in *United States v. Place,* 462 U.S. 696, 715, 103 S.Ct. 2637, 2649, 77 L.Ed.2d 110, 126 (1983), is the analysis adopted by this court under the Pennsylvania Constitution. Title 75 Pa.C.S. § 6308(b), permitting systematic roadblocks for the purpose of checking vehicles and drivers for registration, licensing, and equipment violations, directly traverses Article I, § 8 of the Pennsylvania Constitution, as it does not require articulable probable cause to believe that evidence of criminal activity may be found in the places to be searched.

The evidence against appellant was obtained in violation of his rights under the Pennsylvania Constitution and should have been suppressed, and his motion to dismiss should have been granted. I would reverse the order of the Superior Court.

Two additional points should be made. First, despite the majority's protestations, *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), does not provide "significant authority" for this case. There were indications in dicta that various members of this court would, if the issue were to arise, conclude that systematic roadblocks are constitutional; such indications are no more authoritative than a group of law review articles by the various justices predicting how they would view such a question, and have the same weight as their

answers to questions by a senate confirmation committee would have if the various justices had been interrogated by such a committee. The dicta in *Tarbert* in which several justices gratuitously expressed their views on an issue not before that court obviously have some value in predicting how this court approaches the issue, but this is not what we mean by precedential authority in our system of jurisprudence.

Finally, independent of the question of the constitutionality of Title 75 Pa.C.S. § 6308(b), permitting systematic roadblocks for the purpose of checking vehicles and drivers for registration, licensing, and equipment violations, I believe the roadblock conducted in this case was not reasonable by any standard. The intrusive nature of the search and seizure appears in the majority opinion. The nighttime roadblock consisted of two marked police cruisers with emergency lights activated, uniformed officers wearing orange vests, and emergency flares indicating traffic pull-off areas. All vehicles traveling in both directions were stopped, and police officers checked vehicle registration, drivers licenses, and obvious equipment violations. It seems obvious to me that such a roadblock, during hours of darkness, in the pastoral setting of a state park, with flashing lights and emergency flares, is highly intrusive, distracting, confusing, alarming, and unnecessary. There was no claim that more violations were likely to occur after dark than during daylight hours; the roadblock in question was needless, excessive, and unreasonable.

I would reverse the order of the Superior Court.

ZAPPALA and CAPPY, JJ., join this dissenting opinion.

ZAPPALA, Justice, dissenting.

Because I disagree with the majority's initial premise that the constitutionality of a systematic roadblock is subject to a balancing analysis, I must vigorously dissent.

Article 1, Section 8 of our Pennsylvania Constitution prohibits "unreasonable searches and seizures." In *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), I expressed my view that systematic roadblocks are repugnant to our State

Constitution. This view was in accord with our prior decision in *Commonwealth v. Johnston*, 515 Pa. 454, 530 A.2d 74 (1987), in which we specifically rejected the balancing analysis of *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), and instead adopted the dissenting view that such an analysis is inappropriate in evaluating the propriety of a search and seizure under the Fourth Amendment of the United States Constitution. Because there existed articulable facts upon which to base a finding of probable cause, Article 1, Section 8, of our State Constitution was not violated in *Johnston.* As was the case in *Tarbert*, in the appeal *sub judice* we are not confronted with competing constitutional precepts but whether articulable facts are present to lead a police officer to believe that a crime is being committed. Since no such facts are present, I find the searches conducted here repugnant to Article 1, Section 8, of our State Constitution.

Furthermore, it is important to note that the grandiose roadblock conducted in this matter only discovered minute traffic and equipment violations. As a basis for finding the intrusion here constitutionally sound, the majority relies upon the government's legitimate interest in insuring safety on highways. In light of the nature of *this* roadblock and the violations it produced[1], I see this basis, as a reason for infringing upon a constitutional precept which has existed for over 200 years, as a shallow smoke screen.

Finally, the dangerous and abusive extension of the majority's position can best be demonstrated by an appeal recently disposed of by the Superior Court. In *Commonwealth v. Metz*, 412 Pa.Super. 100, 602 A.2d 1328 (1992), the Superior Court affirmed the suppression court's refusal to suppress evidence seized as the result of an automobile driver's refusal to proceed through a roadblock. In *Metz*, before reaching the checkpoint of a systematic roadblock, the driver stopped his vehicle, turned around and drove away. The officers conducting the roadblock immediately pursued the vehicle and

---

1. See addendum attached hereto which sets forth the violations discovered as a result of this roadblock.

stopped it. The Superior Court affirmed the refusal of the trial court to suppress evidence concluding that "In view of Appellant's conduct in attempting to avoid the roadblock ... we find it reasonable for these trained police officers to suspect that Appellant was in violation of the Vehicle Code or engaged in criminal activity." 412 Pa.Super. at 113, 602 A.2d at 1335. Consequently, it is now impermissible to avoid a systematic roadblock. This obliteration of a constitutional right is premised on the fact that a systematic roadblock is reasonable and any effort to avoid it must be an attempt to shield criminal activity. Because I cannot condone the majority's underlying premise, nor the logical extension of that analysis, I must dissent.

FLAHERTY, J., joins in this dissenting opinion.

CAPPY, J., joins in this dissenting opinion.

August 21, 1987

TO:  Chief Joseph H. Maddox
FR:  Sergeant Samuel G. Gilbert
RE:  TRAFFIC CHECK
    On Tuesday, August 20, 1987 at 2200hrs, our department conducted a traffic check on Rt. 216, at the Codorus Park Office. The check was conducted for a three hour period, ending at 0100hrs, August 21, 1987. The following are the results of that check.

1. Ten citations issued for license violations.
2. Three citations issued for inspection violations.
3. One citation issued for registration violation.
4. Five faulty equipment cards issued for no drivers license.
5. Four faulty equipment cards issued for no registration.
6. Two faulty equipment cards issued for state inspection.
7. One faulty equipment card issued for equipment violation.
8. One warning card issued for change of address.

Samuel G. Gilbert
Sergeant Samuel G. Gilbert