COMMONWEALTH of Pennsylvania, Appellee,

v.

Richard PAES, Appellant.

Superior Court of Pennsylvania.

Argued June 22, 2004.

Filed Nov. 16, 2004.

David B. Chontos, Turtle Creek, for appellant.

BEFORE: DEL SOLE, P.J., JOYCE and MUSMANNO, JJ.

OPINION BY JOYCE, J.:

¶ 1 Richard Paes (Appellant) appeals from the judgment of sentence entered May 28, 2003 in the Court of Common Pleas of Fayette County. We reverse and vacate the judgment of sentence. The rel-

evant facts and procedural history are as follows.

¶ 2 On April 16, 2000, Pennsylvania State Police were conducting a regulatory roadblock in Redstone Township. During the course of the roadblock, Appellant was stopped while driving his vehicle. Appellant indicated that he was not in possession of a driver's license, registration or proof of insurance. Accordingly, he was asked to pull to the side of the road where the officer noticed signs of intoxication, namely, red, glossy eyes, slurred speech, and an odor of alcoholic beverages emanating from Appellant's person. Appellant was asked to perform field sobriety tests, which he failed. Consequently, he was taken to the hospital where blood was drawn revealing a blood alcohol content of .21%.

¶ 3 Appellant was charged with driving under the influence, 75 Pa.C.S.A. § 3731. He filed an omnibus pretrial motion raising, *inter alia*, the constitutionality of the roadblock. A hearing was held on January 3, 2003; on February 19, 2003, Appellant's motion was denied. Thus, on May 20, 2003, Appellant proceeded to a nonjury trial where he was found guilty. On May 28, 2003 he was sentenced to nine months to five years of incarceration and ordered to pay the costs of prosecution and a $700.00 fine. Appellant filed a timely appeal, raising the following issues for our consideration:

1. Is a roadblock constitutionally permissible when there is no prior approval regarding the particulars of the roadblock and there is insufficient evidence the selected road was likely to be traveled by drivers committing registration, licensing or equipment violations?

2. When a police officer renders an opinion based upon his specialized knowledge on the administration, performance and results of field sobriety tests must Pa.R.E. 702 regarding expert

testimony be satisfied before admitting such evidence?

3. Can the Commonwealth's guilty verdict of driving with a blood alcohol content in excess of .10 percent be sustained when it failed to satisfy the requirements of Section 1547 regarding the admissibility of a chemical test?

4. Can the sentencing court impose a fine when it fails to consider if the defendant can pay the fine, his financial resources and the burden payment would have?

5. Can the judiciary inject itself into a function reserved for the executive branch of our tripartite system of government by deciding the gradation of the crime?

6. Is the offense gravity score for a DUI, second degree misdemeanor, a two or a three?

7. Can an ambiguous sentence be imposed?

Appellant's brief, at 7.

■■■■ ¶ 4 Appellant's first issue challenges the suppression court's finding that the regulatory roadblock was not constitutionally defective.

When we review the ruling of a suppression court, we must first ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense that remains uncontradicted in context of the whole record. If there is support on the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error. If there is sufficient evidence of record to support the suppression court's ruling and that court has not misapplied the law, we will not substitute our credibility determination for that of the suppression court judge.

*Commonwealth v. Palmer*, 751 A.2d 223, 225–226 (Pa.Super.2000) (citations omitted). We will review Appellant's first challenge with this standard in mind.

¶ 5 A police officer's ability to conduct a systematic roadblock is statutorily authorized. 75 Pa.C.S.A. § 6308(b) states:

(b) Authority of police officer.—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b). The constitutional implications arising from this statute have been discussed by our Supreme Court in *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177 (1992), where the defendant was convicted of driving without a license after being stopped at a regulatory roadblock. The defendant challenged the constitutionality of the roadblock under Article 1 Section 8 of the Pennsylvania Constitution, which prohibits unreasonable searches and seizures. The Court determined that the reasonableness of the roadblock would be assessed by using a balancing test which weighs the level of intrusion upon the citizen against the government's promotion of its legitimate interests. *Id.* at 1178. "A central concern in balancing the opposing interests is protecting the individual from

arbitrary invasions at the unfettered discretion of the officers in the field." *Id.* citing *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

¶ 6 In determining what factors should be utilized in applying the balancing test, the Court referred to its prior decision, *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987), a plurality opinion which reversed the conviction of a driver found guilty of DUI after having been stopped at a sobriety roadblock. The *Tarbert* Court suggested guidelines designed to effectuate the right of citizens to be free from arbitrary invasions of their privacy while maintaining the government's right to promote safety on the roadways. The Court stated:

The intrusiveness, both objective and subjective, of a drunk-driving roadblock can be reduced to a constitutionally acceptable degree by the manner in which it is managed and conducted. In this regard the *Martinez–Fuerte* [1] decision is instructive. For example, the conduct of the roadblock itself can be such that it requires only a momentary stop to allow the police to make a brief but trained observation of a vehicle's driver, without entailing any physical search of the vehicle or its occupants. To avoid unnecessary surprise to motorists, the existence of a roadblock can be so conducted as to be ascertainable from a reasonable distance or otherwise made knowable in advance. The possibility of arbitrary roadblocks can be significantly curtailed by the institution of certain safeguards. **First, the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police offi-cers in the field.** In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be traveled by intoxicated drivers. The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision.

*Id.* at 1043 (emphasis added)(footnote inserted). The Court recommended that a drunk-driver roadblock must be conducted "substantially in compliance" with the above guidelines. *Id.* The *Blouse* Court adopted the guidelines to ensure that regulatory roadblocks were conducted in a systematic, non-arbitrary manner to comport with the constitution. *Blouse,* 611 A.2d at 1180.

¶ 7 In the case at bar, Appellant's attack on the constitutionality of the roadblock is twofold. First he argues that no evidence exists that "prior administrative approval" was given regarding the time, date, and location of the roadblock. He maintains that the Pennsylvania State Police Field Regulations require that the Patrol Section/Station Commander shall select the location, date and hours for the roadblocks and that these people did not testify. Moreover, the field regulations state that the site selection criteria shall be documented on a form, which was not complied with. As a result, he contends, there was not substantial compliance with the "prior administrative approval" guideline as set forth in *Tarbert* and *Blouse.* We agree, in part, with Appellant's contentions.

¶ 8 In support of its decision to deny Appellant's suppression motion, the sup-

1. *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

pression court determined that substantial compliance with the *Blouse* guidelines existed because:

> A patrol trooper in the field did not arbitrarily select the site for the regulatory roadblock. The site was selected by the immediate supervisor of the patrol troopers. The site selected was based on an administrative decision after reviewing the results of previous roadblocks conducted on the same site during preceding month (sic).
>
> Accordingly, we found that the date, time and location of the regulatory roadblock was determined by prior administrative action.

Suppression Court Opinion, 8/14/03, at 3–4. The suppression court's findings are not supported by the record.

¶ 9 First, we turn to the suppression court's conclusion that "the patrol trooper in the field did not arbitrarily select the site for the regulatory roadblock" but that it was "selected by the immediate supervisor of the patrol trooper." The suppression hearing testimony reveals that Corporal Howard was a field trooper. This is evident in that he physically participated in the roadblock. While it is true that Corporal Howard testified that he was the supervisor of the patrol troopers, upon which the suppression court relied, this status does not bear any relation to whether prior administrative approval was granted to set up the roadblock. The Pennsylvania State Police field regulations, which establish the policy, procedures, and guidelines for conducting a roadblock, require that each regulatory roadblock shall be established under the command of a supervisor. Pennsylvania State Police

Field regulations, Certified Record Docket Entry 25, at 9.[2] This is for the purpose of manning and overseeing the roadblock and has nothing to do with obtaining prior administrative approval to conduct the roadblock in the first place. In fact, the field regulations specifically state that the selection of the location, date and hours for the roadblock shall be selected by the Patrol Section/Station Commander. Corporal Howard testified that he did not hold either of these positions. The record is completely devoid of any testimony or documentary evidence to demonstrate under whose authority Corporal Howard was acting when he conducted the roadblock. Indeed, it can be gleaned from the record that the decision to operate the roadblock was made by Corporal Howard himself since he testified that he did not document the criteria for the site selection as required by the field regulations as it was not his customary practice to do so. N.T., 1/03/03, at 21. Thus, the suppression court's conclusion that the decision to conduct the roadblock was not made by a field officer but by someone with the proper administrative authority is not supported by the record.

¶ 10 The second basis the suppression court relied upon in denying Appellant's suppression motion was that "the site selected was based on an administrative decision after reviewing the results of previous roadblocks conducted on the same site during [the] preceding month." The record substantiates this conclusion as evidence was presented that in March, April, and May of 2000, regulatory roadblocks had been conducted at the same location and a significant number of offenders had

---

**2.** Our decision should not be read to imply that any time the police fail to abide by their own field regulations a constitutional question shall arise. The relevance of this specific regulation is that it explains the lack of signif-

icance of Corporal Howard's supervisory position during the roadblock as it pertains to the "prior administrative approval" guideline as mandated by our Supreme Court.

been issued citations.[3] However, again, the record is devoid of any evidence that the cite selection was based on an administrative decision. As we have already discussed, the decision was apparently made by Corporal Howard, a police officer in the field. Thus, the basis upon which the suppression court denied Appellant's omnibus pre-trial motion is not supported by the record.

¶ 11 Aside from the reasons relied upon by the suppression court, we have scrutinized the record to determine if another basis exists upon which a determination could be made that there was prior administrative approval. Not once was a question asked or testimony provided that could substantiate this requirement. Outside of the record, perhaps Corporal Howard was given authority to conduct the roadblock by an administrator. Or, perhaps it was a slow day and a few officers decided to spontaneously conduct one. From the record, either possibility or a myriad of others that lie somewhere in between, could have precipitated the setting up of the roadblock.

¶ 12 In conclusion, we have reviewed the testimony of the suppression hearing very carefully. The fact of the matter is that there is absolutely no testimony whatsoever that would indicate that prior administrative approval was given to set up the roadblock. What is evident, however, is that Corporal Howard, a field officer, made the decision to set up the roadblock and then participated in conducting its operation. The Commonwealth has the burden of proof in establishing the constitu-

tionality of the roadblock. It has failed to do so. Since "a central concern in balancing the opposing interest [of citizens and the government] is protecting the individual from arbitrary invasions at the unfettered discretion of the officers in the field," and the Commonwealth failed to prove that a prior administrative decision was the impetus for setting up the roadblock, we find that the Commonwealth did not substantially comply with the "prior administrative approval" guideline as set forth in *Blouse*. Accordingly, we reverse the order of the suppression court, which denied Appellant's omnibus pretrial motion, and vacate his judgment of sentence.

¶ 13 Given our disposition of Appellant's first issue, it is unnecessary for us to address his remaining allegations of error.

¶ 14 Order reversed. Judgment of sentence vacated. Jurisdiction is relinquished.[4]

¶ 15 DEL SOLE, P.J. files a Dissenting Statement.

## DISSENTING STATEMENT BY DEL SOLE, P.J.:

¶ 1 While I agree with the legal analysis advanced by the majority, I must dissent.

¶ 2 I agree that *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177 (1992), is the leading Supreme Court case on the constitutionality of regulatory roadblocks and that in general the criteria set forth in *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987), were adopted to assure "that an individual's reasonable ex-

---

**3.** In reaching this conclusion, we reject the second aspect of appellant's challenge to the constitutionality of the checkpoint wherein he argues that the testimony failed to establish that the site selected for the checkpoint was based on local experience is likely to be traveled by offenders.

**4.** The Commonwealth chose not to submit an appellate brief to support its position. We cannot strongly enough express our dismay as to this decision. The district attorney, as an advocate for the people of this Commonwealth, has an obligation to zealously argue its position. It cannot do so when it chooses not to submit an advocate's brief.

pectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Blouse,* 611 A.2d at 1180.

¶ 3 Where I part company with the majority is in its conclusion that the trial court's factual finding that there was compliance with *Blouse* is not supported by the record. Corporal Howard testified that he set up the roadblock in accordance with regulations. He further testified about the results of prior roadblocks at the same location, each of which resulted in a substantial number of citations for regulatory violations.

¶ 4 The majority focuses on the State Police Field Regulations requiring that the location, date and hours for a roadblock be selected by the patrol section/station commander, and that the site selection criteria be documented on a particular form. The majority concludes from these failures that the roadblock was unconstitutional. However, it is not the State Police Field Regulations that control whether a roadblock is constitutional. Rather, what is required to pass constitutional muster is that the criteria set forth in *Blouse* are substantially complied with. *Blouse* requires an administrative decision by someone other than a patrol officer in the field. I believe that Corporal Howard meets this requirement and the roadblock was therefore constitutional, even if it was not done in accordance with the State Police Field Regulations.