J-A26038-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAYMOND JOSEPH KRAYNAK | |
| Appellant | No. 2235 MDA 2013 |

Appeal from the Judgment of Sentence December 2, 2013
In the Court of Common Pleas of Northumberland County
Criminal Division at No(s): CP-49-CR-0000954-2012

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 14, 2014**

Raymond Kraynak ("Appellant") appeals from the judgment of sentence entered in the Northumberland County Court of Common Pleas following his conviction for Driving Under the Influence of Alcohol[1] ("DUI"), and challenges the trial court's grading of the offense as well as its ruling denying his motion to suppress.  After careful review, we affirm.

We summarize the straightforward factual and procedural history as follows.  At approximately 11:00 p.m. on May 26, 2012, Appellant was driving northbound on Route 61 in Coal Township, Northumberland County, when he entered into an area where police were conducting a sobriety checkpoint.  Appellant, a medical doctor, claims not to have seen the

_____

[1] 75 Pa.C.S. § 3802(a)(1).

multiple 4-foot-by-4-foot reflective road signs announcing the checkpoint. Instead, Appellant claims that he thought he had arrived upon an accident scene. Instead of entering the checkpoint, Appellant parked his car, exited the vehicle, and walked over to where the police were interacting with motorists passing through the checkpoint in order to offer aid as a physician, if necessary. Appellant's subsequent interactions with the police caused the police to conduct two field sobriety tests, both of which Appellant failed. After he refused chemical testing, police arrested Appellant and charged him with DUI.

The trial court conducted a bench trial on August 30, 2013, and found defendant guilty of DUI graded as a misdemeanor of the first degree. On December 2, 2013, the trial court sentenced Appellant to 6 months of intermediate punishment. Appellant timely appealed.

Appellant raises the following questions for our review:

A. Did the trial court commit an abuse of discretion in grading the offense as a misdemeanor of the first degree?

B. Did the trial court commit an abuse of discretion in refusing to afford [Appellant] a trial by jury after it concluded that the offense would be graded a misdemeanor of the first degree?

C. Did the trial court commit an abuse of discretion in holding that the roadblock was legal because the roadblock did not comply with applicable requirements contained in case law?

D. Did the trial court commit an abuse of discretion in ignoring the applicability of the PennDOT D.U.I. manual?

E. Did the trial court commit an abuse of discretion and an error of law in determining that the checkpoint at issue "substantially complied" with all relevant requirements?

F. Did the trial court commit an abuse of discretion in convicting [Appellant] of driving under the influence because the Commonwealth did not sustain its burden of proof?

Appellant's Brief, p. 5 (all capitals removed). For ease of disposition, we will address these claims out of order.

### 1. The Checkpoint/Roadblock Claims

Appellant's claims C, D, & E make related arguments regarding the legality and validity of the roadblock involved in this matter and whether the police complied with the **Tarbert**/**Blouse**[2] checkpoint guidelines. **See** Appellant's Brief, pp. 5 (Claims C, D & E), 17-41. These claims do not afford Appellant relief.

The facts of this matter do not implicate the **Tarbert**/**Blouse** guidelines for checkpoint administration because the police did not stop Appellant at the roadblock. Instead of entering the checkpoint, Appellant himself voluntarily stopped his own car, approached the police, and offered to help. Appellant explained that he did this because he thought he had stopped at an accident scene at which his medical expertise could be of use. Because Appellant did not suspect he was approaching a sobriety checkpoint, he could not have been in fear of being seized at that checkpoint. Further, he was not actually seized as a result of the checkpoint. Instead, by parking and exiting his vehicle, approaching the

---

[2] **Commonwealth v. Tarbert**, 535 A.2d 1035 (Pa.1987); **Commonwealth v. Blouse**, 611 A.2d 1177 (Pa.1992).

police, and initiating a conversation, Appellant initiated a mere encounter with police. He subjected himself to the sobriety investigation necessitated by the police's knowledge that he drove his vehicle to the scene together with his visible signs of intoxication, to wit, weaving and staggering walk, swaying standing gait, odor of alcohol, bloodshot eyes, flushed face, and slurred speech. *See Commonwealth v. Ragan*, 652 A.2d 925, 929 (Pa.Super.1995) (determining that where police have good reason to believe a driver is intoxicated, the police are justified in requesting that the individual submit to sobriety testing). This voluntary mere encounter initiated not by the police, but by Appellant himself, was independent of the existence of the sobriety checkpoint.[3] Accordingly, adherence to the *Tarbert*/*Blouse* checkpoint guidelines is immaterial in this matter.

**2. *Grading of Offense as a Misdemeanor of the First Degree & Right to Jury Trial.***

Next, Appellant makes the interrelated claims that the trial court erred in grading the DUI as a misdemeanor of the first degree and by refusing to

---

[3] Appellant argues that but for the roadblock, he would not have stopped. This argument is unconvincing. Appellant's testimony established that he stopped voluntarily because he thought an accident had occurred. In other words, Appellant intended stop even though he was mistaken about the occurrence of an accident. Of course, if Appellant had been correct, and he had approached an actual automobile accident, Appellant's choice to stop and offer assistance would still have subjected him to investigation and possible arrest if the police determined he was intoxicated. *See Ragan*, *supra*.

allow Appellant a jury trial. *See* Appellant's Brief, pp. 5 (Claims A & B), 16-17. These claims present questions of law; thus, the scope of review is plenary, and the standard of review is *de novo*. ***See Commonwealth v. Arroyo***, 991 A.2d 951, 955 (Pa.Super.2010).

"The right to a jury trial exists when a defendant faces a charge which, alone, could lead to imprisonment beyond six months. By contrast, there is no jury trial right if an offense bears a maximum incarceration of six months or less." ***Commonwealth v. Harriott***, 919 A.2d 234, 237 (Pa.Super.2007) (*citing* ***Commonwealth v. Kerry***, 906 A.2d 1237, 1239, 1240 (Pa.Super.2006).

The Vehicle Code provides:

**(a) General impairment.–**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1). The Vehicle Code grades a first offense violation of section 3802(a)(1) as an ungraded misdemeanor punishable by up to 6 months of imprisonment. 75 Pa.C.S. § 3803(a)(1).[4] Where a first offender

---

[4] In fact, Section 3803(a) grades even a second offense as an ungraded misdemeanor. **See** 75 Pa.C.S. § 3803(a)(1) ("An individual who violates section 3802(a) (relating to driving under influence of alcohol or controlled substance) and has **no more than one prior offense** commits a misdemeanor for which the individual may be sentenced to a term of imprisonment not more than six months and to pay a fine under section
*(Footnote Continued Next Page)*

refuses chemical testing, the violation remains graded as an ungraded misdemeanor punishable by up to 6 months' imprisonment. 75 Pa.C.S. § 3803(b)(2). Where a defendant with a prior DUI conviction refuses chemical testing, the subsequent DUI/refusal charge is graded as a misdemeanor of the first degree. 75 Pa.C.S. § 3803(b)(4). However, to the extent that the Vehicle Code provides that certain violations of section 3802(a) are correctly graded as misdemeanors of the first degree,[5] this Court has determined that the Vehicle Code's DUI grading provisions still limit the term of imprisonment possible to a maximum of 6 months' incarceration.[6] **See**

**Commonwealth v. Musau**, 69 A.3d 754 (Pa.Super.2013).[7] Accordingly,

_(Footnote Continued)_ ————————————

3804 (relating to penalties).") (emphasis provided). The grading for a violation of section 3802(a) does not increase to a misdemeanor of the second degree until the third violation. **See** 75 Pa.C.S. § 3803(a)(2) ("An individual who violates section 3802(a) and has **more than one prior offense** commits a misdemeanor of the second degree.") (emphasis provided).

[5] **See** 75 Pa.C.S. § 3803(b)(3), (4) & (5).

[6] Crimes classified as first-degree misdemeanors are ordinarily punishable by up to five (5) years of imprisonment. **See** 18 Pa.C.S. § 106(b)(6); 18 Pa.C.S § 1104.

[7] We note that Pennsylvania's Supreme Court currently holds the **Musau** petition for allowance of appeal in abeyance pending its decision in **Commonwealth v. Mendez**, 32 EAP 2013, in which the Supreme Court is addressing the issue of whether "in upholding a sentence that exceeds the statutory maximum explicitly set out in 75 Pa.C.S. § 3803, did not the majority violate the rules of statutory construction in order to avoid what it saw as 'problematic consequences' resulting from a straightforward application of the statute?" **See Commonwealth v. Mendez**, 49 EAL 2013, Order Granting Allocatur, 7/17/2013. However, this Court may not overrule
_(Footnote Continued Next Page)_

regardless of the trial court's grading of the offense, Appellant was never exposed to a maximum possible term of incarceration exceeding 6 months, and therefore was never entitled to a trial by jury. *See Harriot*, *supra*.

Additionally, the *Musau* decision is distinguishable from the instant matter in that it involved a *repeat DUI offender* who refused chemical testing. *See Musau*, 69 A.3d at 755-56. The court in *Musau* therefore appropriately graded the DUI in that matter as a misdemeanor of the first degree. *Id.* at 758; *see also* 75 Pa.C.S. § 3803(b)(4). Here, despite the fact that this was Appellant's first DUI, the trial court granted the Commonwealth's motion to amend the information to grade the offense as a misdemeanor of the first degree based on the decision in *Musau*. This was error, which the trial court concedes. *See* 1925(a) Opinion, p. 7.

Remand to re-grade this DUI, however, is not necessary. First, as the trial court explained, Appellant suffered no sentencing prejudice from the grading of the DUI as a misdemeanor of the first degree instead of an ungraded misdemeanor because "the sentence actually imposed upon [Appellant] was consistent with the grading of the offense as an ungraded

---
*(Footnote Continued)* ————————

another panel of the Superior Court, and *Musau* remains binding law. *See Commonwealth v. Beck*, 78 A.3d 656, 659 (Pa.Super.2013); *Marks v. Nationwide Ins. Co.*, 762 A.2d 1098, 1101 (Pa.Super.2000) (despite the Pennsylvania Supreme Court having granted a petition for allowance of appeal, a decision remains precedential until it has been overturned by the Pennsylvania Supreme Court).

misdemeanor." 1925(a) Opinion, p. 7. Additionally, no prejudice based on an increased Prior Record Score ("PRS") calculation will occur in the future because a first DUI is excluded from a defendant's PRS regardless of grading.[8] Thereafter, second or subsequent DUIs each count as one-point offenses regardless of the DUI grading and regardless of the crime with which the defendant then stands charged. Otherwise stated, only the number, not the grading, of DUI convictions counts in future calculations of PRS.

### 3. Sufficiency of the Evidence Claim

Lastly, Appellant claims that the Commonwealth adduced insufficient evidence to sustain his DUI conviction because there was no direct evidence that Appellant was incapable of safely driving, no one saw Appellant driving, and there was no evidence of the concentration of alcohol in Appellant's breath or blood. *See* Appellant's Brief, pp. 5 (Claim F), 41-43. This claim lacks merit.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in

---

[8] *See* Sentencing Guideline Analysis (7th Ed.), Pennsylvania Commission on Sentencing, pp. 137-138 ("One Point Offenses. One point is added for each prior conviction or adjudication for the following offenses: . . . Driving Under the Influence of Alcohol or Controlled Substance, **except for a first lifetime conviction or adjudication**.) (emphasis provided).

the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011).

As previously stated, the Vehicle Code provides:

**(a) General impairment.–**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1).

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech.   Blood alcohol level may be added to this list, although it is not necessary . . . The weight to be assigned these various types of

evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol-not on a particular blood alcohol level.

***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa.2009). Further, "[u]nder Pennsylvania law, an eyewitness is not required to establish that a defendant was driving, operating, or was in actual physical control of a motor vehicle. The Commonwealth can establish through wholly circumstantial evidence that a defendant was driving, operating or in actual physical control of a motor vehicle." ***Commonwealth v. Johnson***, 833 A.2d 260, 263 (Pa.Super.2003).

The trial court summarized the trial evidence regarding Appellant's arrest as follows:

> The Commonwealth offered the testimony of several officers who interacted with [Appellant] at the checkpoint. These officers have many years experience in detecting the signs of intoxication and all offered consistent testimony concerning their observations of [Appellant] at the roadblock. Officer Stephen Bennick was stationed in the roadblock such that he was the officer interacting with the motorists as they passed through the checkpoint. He was the first officer to observe [Appellant] after [Appellant] pulled his vehicle behind a marked police unit with its emergency lights activated, parked[,] got out of the driver's side of the vehicle, walked around to the front of the vehicle and walked up the center of [the] road on the passing lines.[9] As

_____

[9] Despite Appellant's claims that no one saw him driving, Officer Bennick clearly and repeatedly testified that he observed Appellant's vehicle park behind a marked cruiser and that he then watched Appellant exit the vehicle
*(Footnote Continued Next Page)*

- 10 -

[Appellant] walked up the center of the road toward Officer Bennick, he was weaving and staggering. Once Officer Bennick began to speak to [Appellant], the officer noted the smell of alcohol on [Appellant's] breath and observed that he had droopy, bloodshot eyes and was swaying. At that time, [Appellant] admitted to Officer Bennick that he had been drinking.

After this contact, Officer Bennick turned [Appellant] over to Officer Matthew Henrich, who noted that [Appellant] had a strong odor of alcohol on his breath, his speech was slurred, and his face was flushed. Officer Henrich then conducted two field sobriety tests with [Appellant]. During both tests, [Appellant] failed to follow the officer's instructions to wait until the demonstration of the test was completed before beginning the test himself. When [Appellant] attempted to complete the heel-to-toe test, there were gaps between his feet, he took twelve steps, instead of the instructed nine, and he stepped on his toes. [Appellant] then failed to perform the one-leg stand in accordance with the instructions given to him on his first attempt, raising his leg such that his thigh, and not his foot, was parallel to the ground. On his second attempt, the officer told him to stop the test because he was afraid [Appellant] would fall. Accordingly, [Appellant] failed both field sobriety tests administered to him.

After being advised that he would be placed under arrest, [Appellant] became irate and agitated, requesting to speak to the checkpoint supervisor, Officer Ketchem, who also noted a strong odor of alcohol on [Appellant's] breath along with slurred speech and swaying.

All of these observations by experienced police officers of [Appellant's] physical manifestations of intoxication established beyond a reasonable doubt [Appellant's] inability to safely operate his vehicle due to impairment by alcohol prior to arriving at the checkpoint.

1925(a) Opinion, pp. 5-6.

_(Footnote Continued)_ ─────────────

from the driver's side before approaching. **_See_** N.T. 8/30/2013, pp. 118-121.

- 11 -

Viewed in the light most favorable to the Commonwealth as verdict winner, this evidence was sufficient to convict Appellant of DUI in violation of section 3802(a)(1).

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/14/2014</u>