J-A25028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD LEROY MESHYOCK | : | |
| | : | |
| Appellant | : | No. 808 MDA 2019 |

Appeal from the Judgment of Sentence Entered April 18, 2019
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s):  CP-44-CR-0000605-2017

BEFORE:  STABILE, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:            **FILED FEBRUARY 18, 2020**

Edward Leroy Meshyock appeals from the judgment of sentence entered on April 18, 2019. He challenges the constitutionality of the sobriety checkpoint he drove through that resulted in his convictions for three counts of driving under the influence of alcohol or controlled substance ("DUI"), and one count each for driving while operating privilege is suspended or revoked, registration and certificate of title required, obedience to authorized persons directing traffic, careless driving, and habitual offenders.[1] We affirm.

The procedural history and facts of this case are as follows. Sergeant Jerid Hartsock testified that he was working as a checkpoint supervisor for a DUI checkpoint conducted from 10 p.m., June 30, 2018, until 3 a.m., July 1, 2018. N.T., Trial, 2/21/19, at 6, 7, 8. He stated, "The checkpoint we set up

_____

[1] 75 Pa.C.S.A. §§ 3802(a)(1), (d)(1)(i), (d)(3), 1543(b)(1.1)(i), 1301(a), 3102(a), 3714(a), and 6503.1, respectively.

where we posted signs. So everybody knew that there was a checkpoint starting at 600 feet from the center of the checkpoint. In both directions. We used large, large signs, cones and flares so that everybody was aware there was a sobriety checkpoint ahead." *Id.* at 8.

According to Sergeant Hartsock's testimony, in the early morning hours of July 1, Sergeant Hartsock saw Meshyock riding his motorcycle through the checkpoint. *Id.* at 8, 9. Meshyock "[p]assed all of our signs and also the motorcycle passed several troopers who were trying to get the motorcycle to stop at the checkpoint." *Id.* at 8. "That motorcycle passed the troopers that had their hands raised out, trying to get him to stop." *Id.* Meshyock finally came to an abrupt stop after Sergeant Hartsock "kind of yelled an order to try to get him to pay attention to stop." *Id.* at 8, 9. Sergeant Hartsock asked Meshyock why he did not stop and Meshyock "said he thought it was some sort of a fire or something[.]" *Id.* at 9. Sergeant Hartsock testified he observed that Meshyock's "eyes were glassy and bloodshot," and he "detected the odor of an alcoholic beverage." *Id.* Meshyock admitted to Sergeant Hartsock that "he had been drinking." *Id.* After conducting field sobriety tests, Sergeant Hartsock "believed with the signs that I saw that [Meshyock] was intoxicated to the point that he wasn't safe to drive" and placed Meshyock under arrest. *Id.* at 13, 14.

The Commonwealth charged Meshyock with the above-referenced offenses and he filed a motion to suppress, arguing "[t]he State Police

conducted an unlawful roadblock[.]" Memorandum of Law in Support of Defendant's Omnibus Pretrial Motion, filed 9/27/18, at 3.

The Commonwealth presented the following evidence in support of the constitutionality of the checkpoint. Sergeant Hartsock testified that the particular location of the checkpoint was chosen based on statistical information, including a "heat map" that showed where there had been DUI arrests and DUI-related crashes. N.T., Suppression Hearing, 8/28/18, at 23-25; *see* Commonwealth's Exhibit 1 - Sobriety Checkpoint Plan. Based on this information, the state police "pick[ed] a road which obviously people would have to use to get back and forth from where we're having the issues and that's why we did our DUI checkpoint." *Id.* at 24.

Prior to implementing the checkpoint, Sergeant Hartsock gave the Sobriety Checkpoint Plan to Lieutenant Storm for approval. *Id.* at 8. Sergeant Hartsock testified that Lieutenant Storm was "somebody higher than me." *Id.* at 21. The Sobriety Checkpoint Plan included a listing of each DUI arrest and DUI crash, identified the county where each arrest and crash occurred, and included the heat map showing the affected areas. *Id.*

After approval, troopers gave prior notice of the checkpoint to the community on June 17, 2017, via the local newspaper. *Id.* at 6. On the night of the checkpoint, there was a sign giving notice about the checkpoint "from the center of the checkpoint in both directions 600 feet." *Id.* at 9. Troopers also set up flares and cones. *Id.* Sergeant Hartsock also testified that, pursuant to established State Police policy, they stopped every vehicle that

passed through the checkpoint unless traffic backed-up, at which point the policy would require them to wave vehicles through. *Id.* at 10, 22.

The trial court denied the motion and Meshyock proceeded with a bench trial. The court found him guilty as above and sentenced him to a total of six to 18 months in jail followed by 18 months of reporting probation, plus fines. This timely appeal followed.

Meshyock asks us to review one claim:

> Did the trial court err inholding that a State Police roadblock conducted in Mifflin County on the night of June 30, 2017, into July 1, 2017, complied with all five requirements for police roadblocks as articulated by the Pennsylvania Supreme Court in *Commonwealth v. Tarbert*[,] 517 Pa. 277, 535[] A.2d 1035 (1987) and *Commonwealth v. Blouse*, 531 Pa. 167, 611 A.2d 1177 (1992)?

Meshyock's Br. at 4 (suggested answer omitted).

Our standard of review of the denial of a motion to suppress "is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Garibay*, 106 A.3d 136, 138 (Pa.Super. 2014) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010)). Where the Commonwealth prevails at the suppression motion, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* (quoting *Jones*, 988 A.2d at 654). Our scope of review is plenary. *Id.*

A DUI checkpoint passes constitutional muster where there is *substantial*, "not complete," compliance with the following guidelines:

1. Vehicle stops must be brief and must not entail a physical search;

2. There must be sufficient warning of the existence of the checkpoint;

3. The decision to conduct a checkpoint, as well as the decisions as to time and place for the checkpoint, must be subject to prior administrative approval;

4. The choice of time and place for the checkpoint must be based on local experience as to where and when intoxicated drivers are likely to be traveling; and

5. The decision as to which vehicles to stop at the checkpoint must be established by administratively pre-fixed, objective standards, and must not be left to the unfettered discretion of the officers at the scene.

***Commonwealth v. Worthy***, 957 A.2d 720, 725 (Pa. 2008) (citing ***Blouse***, 611 A.2d at 1180 (quoting ***Tarbert***, 535 A.2d at 1043)). "Thus, where the trial court's factual findings support the conclusion that the roadblock substantially complied with the guidelines, and where the trial court's findings are premised on sufficient evidence of record, this Court will not disturb the trial court's conclusion of substantial compliance." ***Commonwealth v. Yastrop***, 768 A.2d 318, 323 (Pa. 2001).

Meshyock maintains that the Commonwealth failed to present evidence that the troopers complied with the first and third guidelines. He argues there was no evidence that the police conducted "'momentary stops' to allow the police to make a brief observation of motorists, without physical searches of

vehicles and passengers." Meshyock's Br. at 13. He also argues there was no evidence "that an officer in an administrative capacity decide to hold the roadblock and create and [sic] the roadblock plan, rather than an officer who actively participates in the roadblock." *Id.* at 13. Meshyock argues that "[b]oth the decision to hold a roadblock and the roadblock's plan must be **initiated** and **created** by officers in an administrative capacity." *Id.* at 16 (emphasis in original). In support, he cites ***Commonwealth v. Paes***, 862 A.2d 625, 630 (Pa.Super. 2004).

Here, the trial court concluded that the DUI checkpoint substantially complied with the requirements of ***Tarbert/Blouse***, and the record supports that conclusion. Sergeant Hartsock testified that they placed an article in the local newspaper giving prior notice of the checkpoint. He also testified about the statistics, including the "heat map," used to determine where to conduct the checkpoint. Additionally, Lieutenant Storm, whom Sergeant Hartsock described as "somebody higher than me," reviewed and approved the checkpoint before the troopers put the checkpoint into effect. Sergeant Hartsock also testified that, based on Pennsylvania State Police procedure, they stopped every vehicle during the checkpoint unless there was a backup in traffic. Sergeant Hartsock could not recall if there was a backup in traffic on the night in question, but confirmed that if one had developed, they would have followed the established procedure and "let everybody clear through." N.T., Suppression, at 5. All of the above supports the trial court's conclusion

that the checkpoint substantially complied with the ***Tarbert/Blouse*** guidelines.

Meshyock's additional argument that an administrative officer must both "initiate" and "create" the roadblock is unavailing. Meshyock's Br. at 6. His citation to ***Paes*** is inapposite. In ***Paes***, we invalidated a DUI checkpoint because a single officer "made the decision to set up the roadblock and then participated in conducting its operation." ***Paes***, 862 A.2d at 630. ***Paes*** does not stand for the proposition that the same officer cannot both first propose the checkpoint and develop the checkpoint plan. Meshyock's claims are meritless and the trial court did not abuse its discretion in denying his motion to suppress.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/18/2020